**Cameron SMITH, by his next friend E. J. Smith, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 5809.**

United States District Court, D. Wyoming.

Oct. 31, 1974.

W. Perry Dray, Hirst, Applegate & Dray, Cheyenne, Wyo., and William R. Purdy, Toronto, Canada, for plaintiff.

Richard V. Thomas, U. S. Atty., Dist. Wyoming, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

KERR, District Judge.

### FINDINGS OF FACT

1. This action is brought by the plaintiff, Cameron Smith, by and through his next friend, his father, E. J. Smith, against the United States of America pursuant to the provisions of the Federal Tort Claims Act, Title 28, United States Code, Sections 2671 et seq. and 1346(b). The plaintiff is a citizen and resident of Ottawa, in the Province of Ontario, Canada, and at the time of the events leading to this action he was a citizen and resident of Scarborough, one of the buroughs of Toronto, in the Province of Ontario, Canada.

2. The events out of which this action arises occurred in Yellowstone National Park, which is located primarily in the State of Wyoming, but partially in the adjacent states of Idaho and Montana. Yellowstone National Park is by statute a part of the District of Wyoming.

3. Yellowstone National Park is managed by the National Park Service of the Department of Interior of the United States of America, which in manag-

ing such parks is required by Title 16, United States Code, Section 1, to "promote and regulate the use of the Federal areas known as national parks, monuments, and reservations hereinafter specified, except such as are under the jurisdiction of the Secretary of the Army, as provided by law, by such means and measures as conform to the fundamental purpose of the said parks, monuments, and reservations, which purpose is to conserve the scenery and the natural and historic objects and the wildlife therein and to provide for the enjoyment of the same in such manner and by such means as will leave them unimpaired for the enjoyment of future generations."

4. At or about midmorning on August 26, 1970, the plaintiff, Cameron Smith, with his father, E. J. Smith, and his mother, Mrs. Geraldine O. Smith, and his two brothers and three sisters arrived at the North Entrance to Yellowstone National Park at Gardiner, Montana.

5. At that time, Mr. E. J. Smith paid the usual vehicular entry fee for the vehicle and all of its occupants, and the family proceeded on into Yellowstone National Park.

6. A regulation of the Secretary of the Interior, which had been adopted in accordance with law and which was in effect on August 26, 1970, provided that, "no entrance or admission fees shall be charged at Designated Fee Areas requiring such fees for persons who have not reached their sixteenth birthday; . . . ", and on August 26, 1970, plaintiff Cameron Smith was fourteen years old.

7. A statute of the State of Wyoming provides that, "Except as specifically recognized by or provided in section 5 of this act, . . . an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure, or activity on such premises to persons entering for such purposes." Section 34–389.2, Wyo.Stat., 1957 as amended (1973 Cum.Supp.), Sess.Laws, 1965, Chap. 9, Section 2.

8. One of the two exceptions to the aforesaid statute is as follows, "Nothing in this act . . . limits in any way any liability which otherwise exists . . . (b) Where landowner charges for entry.—For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section." Sec. 34–389.5, Wyo.Stat., 1957, as amended (1973 Cum. Supp.), Sess. Laws, 1965, Chap. 9, Sec. 5. There was no charge to Cameron Smith in this instance.

9. At the time the Smith family entered Yellowstone National Park they received a park brochure prepared by the National Park Service which contained a map of Yellowstone National Park on one side and information about the park on the other.

10. Encompassed in the brochure which was furnished to the Smith family was the following language which was printed in blue to set it off from the rest of the text printed in black:

"Thin crusts overlie and conceal pools of boiling water. Each year, many careless visitors are burned. For your safety, stay on the trails or boardwalks at all times—watch your children carefully. Keep pets under physical restraint."

11. Neither Cameron Smith nor any other members of the Smith family read the warning language in the brochure which was furnished to them upon their entry into Yellowstone National Park.

12. The Smiths proceeded into Yellowstone National Park to the Mammoth Hot Springs area, where they stopped to view the Mammoth Hot Springs.

13. Mammoth Hot Springs is a developed area within Yellowstone National Park, and boardwalks and paths are con-

structed and maintained there by the National Park Service for the utilization of park visitors in viewing the attractions at Mammoth Hot Springs. There are posted in that area signs advising visitors to stay on the boardwalks and trails.

14. While at Mammoth Hot Springs some of the members of the Smith family departed from the boardwalks and trails, and another visitor pointed out to them the sign which advised them to stay on the boardwalks and trails. At this juncture Mr. Smith warned the members of his family of the danger present and warned them that they should stay on the boardwalks and trails.

15. At Mammoth Hot Springs the Smith family observed a hole at the bottom of the boardwalk which was fenced off with a metal fence. This hole had a warning sign by it and the family stopped and discussed that. Mr. Smith particularly pointed out to the children, including Cameron Smith, that such areas could give way or cave in.

16. After leaving Mammoth Hot Springs the Smith family proceeded further south toward Norris Junction, stopping once at Obsidian Cliff to observe that feature.

17. They then proceeded further south into Yellowstone National Park where, upon rounding some curves of the road, they observed steam coming from the ground in a meadow-like area to the right of the road in front of them.

18. On approaching this area they observed a paved turnout or parking area in which at least two other vehicles were parked, and they pulled into this area and parked.

19. At this time Mr. Edward James Smith again warned the children in the family with respect to the danger and the necessity of caution in the area. The family proceeded down a path through a grove of pine trees toward the area of thermal activity.

20. This area was not a developed area within Yellowstone National Park, and there were no constructed or maintained boardwalks or trails, nor were there any signs in the area.

21. On August 27, 1970, there was in effect a lawfully adopted regulation of the Department of Interior relating to Yellowstone National Park which provided as follows, "Foot travel in all thermal areas and within the Yellowstone Canyon between the Upper Falls and Inspiration Point must be confined to foot paths, boards or trails that are maintained for such travel and are marked by official signs."

22. At the point where plaintiff Cameron J. Smith sustained his injuries there were no foot paths, boardwalks or trails maintained for foot travel which were marked by official signs.

23. By its appearance the area was one of obvious danger in which boiling water could be observed in a number of small pools within the area, and steam was visible arising from these pools of boiling water.

24. Mrs. Geraldine O. Smith, upon observing the area, proceeded to determine where the children were because she felt that it was her responsibility to observe her children in such dangerous areas, and to watch over them.

25. Mrs. Geraldine O. Smith observed plaintiff Cameron Smith on his hands and knees adjacent to the hot pool in which he sustained his injuries and he was looking down into the pool.

26. Thereafter, plaintiff Cameron Smith stood up by the edge of the hot pool; the ground adjacent to the pool gave way under his weight; and he fell into the pool and was severely burned.

27. The thermal action of the pool in which plaintiff sustained his injuries had caused it to cut back underneath the surface of the ground on the northern and western side of the pool, and a portion of that bank of the pool did break off at about the same time.

28. The specific place where Cameron Smith was standing at the time he fell into the pool, however, was in the northeastern side of the pool and the

bank at that point had not been undercut by the action of the spring.

29. Cameron James Smith sustained 2nd and 3rd degree burns from approximately the area of his armpits to his feet. He sustained 3rd degree burns from the waist on down and was hospitalized for approximately six (6) months while his injuries healed and skin grafting procedures were undertaken. Subsequently he returned to the hospital on several occasions for additional corrective surgery.

30. Cameron Smith has permanent scars over most of his body and did sustain an immeasurable amount of pain and suffering in connection with his burn injuries and the treatment for them.

31. It is within the province of the discretion of the National Park Service acting through its agents and employees to formulate a policy balancing the interests of the safety of visitors and employees in Yellowstone National Park and the preservation of the scenery and the natural and historic objects of the Park for the benefit of the public, and also discretion is present in the making of decisions effectuating the basic plan.

32. It would not be practicable nor reasonable nor in accordance with the statutory duty of managing the Park to develop every thermal area within Yellowstone National Park nor to post warning signs by all thermal features.

33. Despite the efforts of the employees of the National Park Service to provide additional information and warnings with respect to the dangers of thermal features, persons still are injured each year in Yellowstone National Park from burns in the thermal features.

34. With respect to the point at which Cameron Smith fell into the thermal pool there was not any dangerous condition which would have been discoverable by the National Park Service in the exercise of due care.

35. No information from others or by direct observation with respect to any danger relating to the thermal pool into which Cameron Smith fell had, prior to the time of his injury, been communicated to or had come otherwise to the attention of the employees or officials of the National Park Service other than the obvious dangers.

36. At the time of this accident the area was in such a condition as might reasonably be expected for the purposes to which it was dedicated.

37. Plaintiff Cameron Smith failed to exercise ordinary care under all the attendant facts and circumstances for his own safety, nor did his parents exercise ordinary care under all the facts and circumstances for the safety of plaintiff Cameron Smith.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over the subject matter of this action and parties thereto.

2. The National Park Service of the Department of the Interior and the United States of America was foreclosed by its own regulation from charging any fee to plaintiff Cameron Smith, and the exception provided in Sec. 34–389.5, Wyo.Stat., 1957, as amended (1973 Cum.Supp.), Chap. 9, Section 5 of the Sess.Laws, 1965, is not applicable.

3. In accordance with the provisions of Sec. 34–389.2, Wyo.Stat., 1957, as amended (1973 Cum.Supp.), Chap. 9, Sec. 2, Sess.Laws 1965, the defendant, the United States of America, owed no duty of care to plaintiff Cameron Smith to keep the premises safe for his entry or his use for recreational purposes, nor did it owe any duty to give him any warning of any dangerous condition, use, structure, or activity on the premises because he was entering for recreational purposes.

4. Defendant, the United States of America, owed no duty under all the facts and circumstances to plaintiff, and the United States of America has no lia-

bility for the injuries of Cameron Smith.

5. Even if Cameron Smith were an invitee in Yellowstone National Park to whom the United States owed a duty to use ordinary and reasonable care to keep the premises reasonably safe for his visit and to warn him of any hidden danger, there was no breach of any such duty on the part of the defendant, the United States of America.

6. In accordance with the provisions of the Federal Tort Claims Act the United States is liable only if a private person would be liable to the claimant in accordance with the law of the place where the act or omission occurred, and the law of the State of Wyoming is applicable in Yellowstone National Park.

7. Plaintiff Cameron Smith lost his status as an invitee when he proceeded from the paved parking area down the trail beyond any sort of a path and crossed Obsidian Creek to reach the pool where he sustained his injuries. Honan v. Moss, Wyo., 359 P.2d 1002 (1961).

8. If he were an invitee, under the law of Wyoming the duty of care owed by the owner of land to an invitee is to use ordinary and reasonable care to keep the premises reasonably safe for his visit and to warn him of any hidden danger. Ashley v. United States, 215 F.Supp. 39 (D.Neb.1963); Middaugh v. United States, 293 F.Supp. 977 (D.Wyo. 1968). The owner is not an insurer of the safety of the invitee. McKee v. Pacific Power & Light Co., Wyo., 417 P.2d 426 (1966).

9. The United States is not an insurer of the safety of visitors to national parks such as Yellowstone National Park. There is no feasible way to correct the thermal hot pools in Yellowstone National Park which are a part of the natural features of the area, and it would not be reasonable and would infringe upon the discretionary function of the National Park Service of the De-partment of Interior to require that it erect boardwalks, guardrails, barricades, fences, or signs with respect to each and every thermal feature in the park, particularly when the danger of such thermal features is apparent, obvious, and notorious.

10. There is no duty owed by the United States to warn visitors to Yellowstone National Park of defects or dangers which are known to them, or which are obvious to them, or which in the exercise of ordinary care should be observed by such visitors. Loney v. Laramie Auto Co., 36 Wyo. 339, 255 P. 350 (1927).

11. Pursuant to the provisions of Title 28, United States Code, Section 2680, the employees of the United States were exercising due care in the execution of a statute or regulation, and they were engaged in the performance of discretionary functions on the part of the National Park Service of the Department of the Interior at the time the decisions were made with respect to the development of thermal areas within Yellowstone National Park, and at the time the decisions were made to exclude areas like the one in which the plaintiff was injured from the development programs, and under the law no liability attaches to those things involved in that discretion including the failure to erect boardwalks, barricades, guardrails, fences, or signs. Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L. Ed. 1427 (1953); Ashley v. United States, 215 F.Supp. 39 (D.Neb.1963).

12. The facts and circumstances of this case disclose no acts of negligence on the part of the defendant, the United States of America, or its agents, servants or employees, and it follows under the circumstances that any failure to give any additional warning beyond that which was given in this case was not the proximate cause of the injuries to plaintiff Cameron Smith.

13. The plaintiff, Cameron Smith, in proceeding as he did to the

edge of the hot pool into which he fell failed to conform to the standards of conduct required for his own protection because he did not behave as a reasonable man of his age, learning and experience, exercising those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others.

14. Even though a person is an invitee this does not relieve him of the duty to exercise ordinary care for his own safety under all the attendant facts and circumstances. Dudley v. Montgomery Ward Inc., 64 Wyo. 357, 374, 192 P.2d 617 (1948).

15. In failing to even read, which prevented him from recognizing, heeding or observing, the warning which was furnished to him in the form of a brochure issued at the entrance gate at the North Entrance of Yellowstone National Park, plaintiff Cameron Smith, and those with him, failed to abide by the standards required by law for his own protection, and this failure was a legally contributing cause, or was the only proximate cause, in bringing about the harm to the plaintiff, Cameron J. Smith.

16. The violation by Cameron Smith of the provisions of Title 36, C.F.R., Sec. 7.13(K)(2), which was adopted for his safety and that of others, requiring foot travel in thermal areas to be confined to foot paths, boardwalks or trails that are maintained for such travel and are marked by official signs is evidence of his negligence from which the conclusion is drawn that for this reason also Cameron Smith was contributorily negligent.

17. In accordance with the foregoing Findings of Fact and Conclusions of Law, judgment shall be entered in favor of the United States of America and against the plaintiff, Cameron Smith, with costs to be awarded to the defendant, the United States of America, and against the plaintiff, Cameron J. Smith.