Cameron SMITH by his next friend, E. J. Smith, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 75–1115.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted Nov. 10, 1975.

Decided Dec. 27, 1976.

W. Perry Dray, Cheyenne, Wyo. (Hirst, Applegate & Dray, P. C., Cheyenne, Wyo., on the brief), for plaintiff-appellant.

Edwin E. Huddleson, III, Atty., Dept. of Justice, Washington, D. C. (Rex E. Lee, Asst. Atty. Gen., Washington, D. C., Clarence A. Brimmer, U. S. Atty., Stephen F. Eilperin, Atty., Dept. of Justice, Washington, D. C., on the brief), for defendant-appellee.

Before LEWIS, Chief Judge, and HOLLOWAY and DOYLE, Circuit Judges.

HOLLOWAY, Circuit Judge.

This action under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 *et seq.*, concerns a tragic accident in Yellowstone National Park. Plaintiff sought damages for personal injuries received when he fell into a super-heated thermal pool in the Park. The district court entered judgment for the United States, 383 F.Supp. 1076, and this appeal followed. On the appeal we must consider whether the record as a whole gives substantial support to the trial court's findings. So viewed, there was proof tending to show these facts:

Plaintiff Cameron Smith was fourteen years old when he and his family entered the Park through the north entrance at Gardiner, Montana, on August 26, 1970. His father paid a vehicular admission fee at the entrance and received from the ranger on duty two small informational brochures. One brochure advised visitors to the park of the possibly dangerous propensities of bears. The second brochure contained a map of the park features on one side and general information on the other, including a warning set forth in blue italicized type, stating:

> Thin crusts overlie and conceal pools of boiling water. Each year many careless visitors are burned. For your safety, stay on the designated trails or boardwalks at all times—watch your children carefully. Keep pets under physical restraint. (I R. 110).[1]

As the Smiths proceeded into the park, the warnings with respect to the bears were read to the family; however, neither plaintiff nor any other member of the family read the warning about the thermal areas.

The Smiths proceeded southward into the park to Mammoth Hot Springs, a "developed"[2] area where boardwalks and paths were constructed and maintained for visitors by the Park Service. There were signs posted advising visitors to stay on the boardwalks and paths. These signs were pointed out to the Smiths by another park visitor when some members of the family strayed from the boardwalks and trails. Mr. Smith then admonished his children to be careful and to stay on the boardwalks and paths.

Near the parking lot at Mammoth, the Smiths also stopped and discussed a hole at the lower end of the boardwalk which was fenced off and accompanied by a warning sign. The Smiths concluded that this hole might once have been a thermal feature and Mr. Smith pointed out to his children that such areas are dangerous and that the ground could cave way. (II R. 179–81; 383 F.Supp. at 1079).

Leaving the Mammoth area, the Smiths proceeded further south into the park, stopping briefly at Obsidian Cliff. Then, traveling south again, they noticed steam coming from the ground in a meadow-like area to the right of the road. They pulled into a paved turnout or parking area nearby, where at least two other vehicles were parked, and stopped to investigate.

The thermal area where the Smiths had stopped was Clear Water Springs, Wyoming, an "undeveloped" natural area within Yellowstone National Park where no foot paths, boardwalks or trails were constructed or maintained for park visitors and no warning signs were posted. However, as noted, there was a paved parking area, and from plaintiff's exhibit 16, this area appears to have been large enough to accommodate about five or six cars. There was also a worn path leading from the turnout to the meadow. The Smiths started down this path through a grove of pine trees toward the area of thermal activity. Mr. Smith again warned the children in the family about the possible danger. (IV R. 403, 405).

---

1. Citations to the record are made by reference to the volume and then the page of the original record on appeal, here Volume I, page 110.

2. The Government stresses the character of "developed" and "undeveloped" areas. This distinction is emphasized in connection with the Government's reliance on the so-called discretionary function exception to liability under the Tort Claims Act.

The steam rising from the thermal features in Clear Water Springs and the boiling water in the large thermal pools in the meadow were clearly visible to the Smiths. (II R. 104, 116, 127, 182; III R. 216, 227, 250, 275–76). They had to step over bubbling pots some six to twelve inches wide in the middle of the path. (II R. 129, 187).

Plaintiff and his brother Fraser preceded the rest of the family into the thermal area and crossed a small stream known as Obsidian Creek. Plaintiff then walked to the opposite side of a thermal pool where he got down on his hands and knees and looked at the bubbling water in the pool. He then stood up by the edge of the pool. Unfortunately, the ground adjacent to the pool gave way under his weight and he fell into the pool and was severely burned.[3]

Plaintiff submitted a timely administrative claim which was denied. He then filed this suit under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346(b), 2671 *et seq.*, alleging generally that the Park Service acted negligently in failing to: (1) give adequate warnings about the dangers of thermal pools; (2) erect guardrails and boardwalks in thermal areas; and (3) conduct inspections to discover, and then warn about or otherwise make safe, the dangerous conditions at Clear Water Springs. (I R. 3).

Essentially the trial judge found that:

(1) Under the law of Wyoming, applicable in the action by virtue of 28 U.S.C.A. § 1346(b), there was no negligence on the part of the United States because:

(a) the Park service owed no duty to plaintiff since (i) Wyoming law limited the liability of owners of land used for recreational purposes to intentional torts and to situations where the landowner had charged a fee for entering the land, and (ii) plaintiff was not charged an entrance fee (383 F.Supp. at 1080–81);

(b) even if plaintiff were an invitee to whom the United States owed a duty to keep the premises reasonably safe and to warn of hidden dangers, he "lost his status as an invitee when he proceeded from the paved parking area down the trail beyond any sort of a path . . . to reach the pool where he sustained his injuries . . . ." (383 F.Supp. at 1081);

(c) the Clear Water Springs area was one of obvious danger and the United States owed no duty to warn visitors of "defects or dangers which are known to them, or which are obvious to them, or which in the exercise of ordinary care should be observed by such visitors." (383 F.Supp. at 1081);

(d) on the facts of the case, there were no acts of negligence by the United States (383 F.Supp. at 1081);

(2) Plaintiff's claims were barred by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C.A. § 2680(a) (383 F.Supp. at 1081); and

(3) Plaintiff was contributorily negligent (383 F.Supp. at 1081–82).

This appeal challenges all of these findings and conclusions. Though we find that the court incorrectly concluded that this action was barred by the discretionary function exception, we are convinced we must affirm because we cannot say that the findings on contributory negligence are clearly erroneous.

I

*The Discretionary Function Exception of 28 U.S.C.A. § 2680(a)*

We find it necessary to deal first with plaintiff's argument that this action is not barred by the discretionary function excep-

---

**3.** Plaintiff sustained second and third degree burns from approximately the area of his chest to the soles of his feet. He sustained third degree burns from the waist down. He was hospitalized for approximately six months while his injuries healed and skin grafting surgical procedures were undertaken. Subse-

quently, he returned to the hospital on several occasions for additional corrective surgery. There are permanent scars over most of his body and he endured considerable pain and suffering in connection with his injuries and the treatment for them. (VI R., Pl. Ex. 47).

tion contained in 28 U.S.C.A. § 2680(a)[4] because the trial court's adverse ruling on this point, if correct, would constitute a jurisdictional bar to the maintenance of this action. *Morris v. United States,* 521 F.2d 872, 874 (9th Cir.); *Griffin v. United States,* 500 F.2d 1059, 1063 (3d Cir.); *Gibson v. United States,* 457 F.2d 1391, 1392 n. 1 (3d Cir.); see also *Dalehite v. United States,* 346 U.S. 15, 24, 73 S.Ct. 956, 97 L.Ed. 1427.

■ "The Federal Tort Claims Act waives the Government's immunity from suit in sweeping language." *United States v. Yellow Cab Co.,* 340 U.S. 543, 547, 71 S.Ct. 399, 402, 95 L.Ed. 523. However, the waiver in 28 U.S.C.A. § 1346(b) is limited by the several exceptions contained in 28 U.S. C.A. § 2680. If one of these exceptions is applicable, "[t]he provisions of this chapter and section 1346(b) of this title shall not apply . . ." 28 U.S.C.A. § 2680. In such case a district court must dismiss for lack of subject matter jurisdiction. *Morris v. United States,* supra, 521 F.2d at 875.

To analyze the discretionary exception ruling by the trial judge here it is helpful to divide the reasoning in his conclusion of law into two parts:

11. [1] Pursuant to the provisions of Title 28, United States Code, Section 2680, the employees of the United States were exercising due care in the execution of a statute or regulation, and they were engaged in the performance of discretionary functions on the part of the National Park Service of the Department of the Interior at the time the decisions were made with respect to the development of thermal areas within Yellowstone National Park, and at the time the decisions were made to exclude areas like the one in which the plaintiff was injured from the development programs, and [2] under the law *no liability attaches to those things involved in that discretion including the failure to erect boardwalks, barri-*cades, guardrails, fences or signs. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Ashley v. United States,* 215 F.Supp. 39 (D.Neb.1963) (Emphasis added).

Plaintiff does not appear to attack the first part of the conclusion holding that the decisions to leave some areas of the park undeveloped was a discretionary function of the Park Service. His brief states that he " . . . is not challenging Defendant's policy decision to leave the Clear Water Springs area in an undeveloped state," and points instead to proof of negligence in inspecting for dangerous conditions and failure to give adequate warnings (Brief of Appellant, 39). Hence, we need not decide this point and will assume, *arguendo,* that the decision to leave the Cold Water Springs area "undeveloped" was a discretionary function.

■ It is the second portion of the trial judge's reasoning which plaintiff finds objectionable. As to it, plaintiff argues that the trial court was in error in holding that the decision whether to put up warning signs was within the ambit of § 2680 because the judge incorrectly concluded that that decision was incident to the decision to leave the Clear Water Springs area undeveloped. See 383 F.Supp. at 1081. We must agree with plaintiff. We are persuaded that the decision as to the posting of warning signs in the area must be judged separately from, and not as a necessary component of, the decision to leave the area undeveloped.

■ The Government says that the decision to provide no warning signs or safety precautions in many thermal areas implemented a Congressional policy to conserve the scenery, 16 U.S.C.A. § 1, and more specifically, was part of a policy decision to make Clear Water Springs an "undevel-

---

4. 28 U.S.C.A. § 2680(a) provides in relevant part:

The provisions of this chapter and section 1346(b) of this title shall not apply to—
(a) Any claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

oped" area; therefore, it is argued, the discretionary function exception applies (Brief for the Appellee, 31–32).[5] We cannot agree. A policy decision to designate certain areas as "undeveloped" ones may reasonably entail the omission of boardwalks, trails or footpaths and signs marking such ways. However, it does not follow that the Government, as a landowner, is absolved of all duty under state law to erect safety devices or signs cautioning about conditions which have been left undisturbed as a policy matter. See *United States v. White,* 211 F.2d 79, 82 (9th Cir.). If we were to accept the Government's broad interpretation of the discretionary exception, it is difficult to perceive which duties under tort law could not be avoided by a similar policy decision to ignore them. This would run counter to the Supreme Court's admonition that such exceptions to this remedial law be narrowly construed. See *Dalehite v. United States,* 346 U.S. 15, 31 & n. 24, 73 S.Ct. 956, 97 L.Ed. 1427, and see *United States v. Muniz,* 374 U.S. 150, 165–66, 83 S.Ct. 1850, 10 L.Ed.2d 805; *Rayonier, Inc. v. United States,* 352 U.S. 315, 320, 77 S.Ct. 374, 1 L.Ed.2d 354.

The Government cannot avoid the imposition of a duty to warn by assimilating the decision on warnings into the decision to develop only certain areas of the Park. The decision to develop only certain areas did not create the problem or the need to decide whether warning signs should be erected. Rather, the need to make the latter decisions has existed ever since Yellowstone was opened to the public. Thus this case is

unlike *Spillway Marina, Inc. v. United States,* 445 F.2d 876 (10th Cir.), where the policy decision to lower a reservoir's water level created the alleged need to give warnings and their omission was held to be within the discretionary function exception and not negligence at an operational level.

We feel that the decision not to give warnings must be examined separately in order to determine the applicability of § 2680(a). Similar decisions to omit warnings of dangerous or hazardous conditions have been held not to come within the exception for discretionary functions. See, e. g., *Foster v. United States,* 183 F.Supp. 524, 526, 528 (D.N.M.), aff'd per curiam, 280 F.2d 431 (10th Cir.); *United States v. White,* 211 F.2d 79, 82 (9th Cir.); *Bulloch v. United States,* 133 F.Supp. 885, 888–89 (D.Utah); *Worley v. United States,* 119 F.Supp. 719, 720–21 (D.Or.). We must agree with these holdings. As was the court in the *White* case, supra at 82, we are convinced that the Government's decision, as a landowner, not to warn of the known dangers or to provide safeguards cannot rationally be deemed the exercise of a discretionary function.[5-a]

In sum, we feel it is clear that the findings and conclusions on the discretionary function exception were in error. This conclusion does not, of course, mean that liability rests on the Government. There remain the questions as to its duty under Wyoming law, the possible breach of that duty, and whether any contributory negligence of the plaintiff bars recovery. We turn to this

5. The Government relies heavily on the testimony by Park Rangers Brown and Estey concerning the placement of warning signs. However, the record clearly shows that the questions directed to both rangers were phrased in terms of "signs" or "visitors signs" rather than "warning signs." *Compare* Brief for the Appellee at 37 n. 25 *with* III R., 284 (visitors' signs), IV R., 383 (signs).

Further, Ranger Estey's testimony in regard to the reason for the absence of warning signs at the Clear Water Springs area was not related to any policy decision but to lack of need for warnings there. IV R., 371, 376. And Ranger Brown testified that matters such as inspection of thermal areas were not specifically the subject of any instructions or guidelines from the

Park Superintendent, but were decisions he would make himself (III R., 296).

5-a. The Government has advised us of the recent decision in *Martin v. United States,* 546 F.2d 1355 (9th Cir. 1976). There the court held that Park Service policy decisions on bear management in Yellowstone are within the discretionary function exception.

The case is not at odds with our conclusion here, and we recognize that such policy decisions are within the exception. However, separate determinations on individual safety devices and warnings signs are not on the same footing, as the Ninth Circuit's decision in the *White* case recognized.

last point since we feel it is dispositive of this case.

## II

### *The Contributory Negligence Defense*

The trial court made several findings and conclusions against plaintiff on the issue of contributory negligence and held that this ground also barred the plaintiff's recovery. Plaintiff challenges all these adverse findings and conclusions, arguing that there was no substantial evidence to support the contributory negligence findings (Brief of Appellant, 45–46).

More specifically, plaintiff says that his conduct was that normally anticipated of a grown sightseer in a new and unguarded wonderland, and that the standard for a child is much lower, citing *Ramirez v. City of Cheyenne,* 34 Wyo. 67, 241 P. 710; that the court erred in holding that his failure to read the warning on the brochure was a contributing cause "or was the only proximate cause" of his injury; that he and his parents realized the danger and exercised due caution to avoid the hot water; that there was no adequate and definite warning for a child of his age—or for an adult—of the danger of overhanging ledges over the boiling springs; and, also that the area around the pool and where he was standing was a path.

While some of the Government's arguments and the related findings on contributory negligence are not persuasive to us,[6] there are other substantial findings which we cannot hold to be clearly erroneous. The court found that at Mammoth Hot Springs the children were warned about the danger of the thermal areas and that such areas could give way, and at the Clear Water Springs area the father told the boys to be careful. Findings 14, 15 and 19. The record supports the findings. II R. 179–81, 186; IV R. 403, 405. The court also found that by its appearance the area was one of obvious danger in which boiling water could be observed in a number of small pools in the area, and stream was visible arising from these pools of boiling water. Finding 23; Plaintiff's Exs. 8 and 9, II R. 104, 116, 127, 182; III R. 216, 227, 250, 275–76.

Plaintiff got down on his hands and knees and looked down into the pool. Finding 25; II R., 130. He then stood up by the edge of the pool and the ground adjacent to the pool gave way under his weight and he fell into the pool. Finding 26; III R., 204, 249, 279–80. The court found that plaintiff "failed to exercise ordinary care under all the attendant facts and circumstances for his own safety . . ." Finding 37. And the court concluded that by his conduct plaintiff failed to conform to standards of conduct required for his own protection, because he did not behave as a reasonable man of his age, learning and experience. Conclusion 13.

It is true that as a boy of 14 plaintiff was required only to exercise for his own protection that care that may fairly and reasonably be expected from children of his age. *Stilwell v. Nation,* 363 P.2d 916, 918 (Wyo.); *Ramirez v. City of Cheyenne,* 34 Wyo. 67, 241 P. 710, 711. We are satisfied, however, that the court applied that standard of care. Further, even as an invitee, the plaintiff owed a reciprocal duty to the invitor to exercise ordinary care to avoid injuring himself. See *Dudley v. Montgomery Ward & Co.,* 64 Wyo. 357, 192 P.2d 617, 622.[7] Putting aside other points

---

6. We are not persuaded that the handing of a brochure alone to families with several children brought home notice of dangers of the sort encountered. Mr. and Mrs. Smith were traveling with their six children when they entered the Park and received the Park brochure. There was no proof that Park Service employees discussed any dangers or gave other warnings to the family.

7. As noted, the court found that plaintiff was not owed the duty due to an invitee under Wyoming law because he was not charged a fee. The findings and conclusions on this point are challenged but we need not resolve this dispute.

Even if the plaintiff were viewed as an invitee charged a fee, he was not relieved of his reciprocal duty under the *Dudley* case to exercise care in his use of the land and in his activities thereon, or from the legal consequences of failure to employ such care. Wyo. Stat. § 34–389.6(b) (1975 Supp.).

relating to contributory negligence, those we have mentioned amply sustain the conclusion (No. 13) that plaintiff's conduct did not conform to the standard required of him. We cannot say that the record as a whole does not support the ultimate finding of contributory negligence, which was for the trier of the facts. *Hart v. Western Investment and Development Co.*, 417 F.2d 1296, 1301 (10th Cir.). This finding and conclusion being supported by the record, recovery by plaintiff was barred under Wyoming law. *Town of Douglas v. Lore*, 375 P.2d 399 (Wyo.).[8]

Since we conclude that the contributory negligence ground supports the trial court's decision, the judgment is affirmed. Each party shall bear his own costs on appeal.

**8.** Subsequent to this accident but before trial of this case Wyoming adopted a comparative negligence statute. Wyo.Stat. § 1–7.2 (1975 Supp.). The statute is not relied on by plaintiff.