**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 17 1997**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JOEL RAY DUKE, by his father and next
friend Danny Duke; DANNY DUKE,

      Plaintiffs-Appellants,

    v.

DEPARTMENT OF AGRICULTURE,
Forest Service, USA; STATE OF NEW
MEXICO, Department of Game and Fish
and State Highway Department,

      Defendants-Appellees.

No. 95-2281

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. CIV-94-150-JP)

---

Colleen M. Clear of Clear & Clear, Albuquerque, New Mexico, for Plaintiffs-Appellants.

Marilyn S. Hutton, Assistant U.S. Attorney (John J. Kelly, United States Attorney, with her on the brief), Albuquerque, New Mexico, for Defendant-Appellee United States of America.

John M. Wells, Albuquerque, New Mexico, for Defendant-Appellee State of New Mexico.

---

Before HENRY, LOGAN, and BRISCOE, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiff Danny Duke, individually and as next friend of plaintiff Joel Ray Duke, appeals the district court's grant of summary judgment in favor of defendants, United States and the State of New Mexico. Plaintiffs asserted that six-year-old Joel Duke suffered serious brain injury when a boulder rolled down a hillside and smashed into his tent while he was camping with his family in the Gila National Forest. Plaintiffs' claim for damages against the United States was founded on the Federal Tort Claims Act (FTCA). The district court found that it lacked subject matter jurisdiction under the discretionary function exception to the FTCA. The central issue in this appeal is whether the discretionary function exception furnishes immunity for the United States. Plaintiffs also appeal the district court's dismissal of their claims against the State of New Mexico as barred from federal court by the Eleventh Amendment.[1]

---

[1] Plaintiffs also argue that the district court applied an improper legal standard, abused its discretion in finding plaintiffs were trespassers under the New Mexico Recreational Use Statute, 17-4-7 N.M.S.A. 1978 (1988 Repl. Pamp.), and made findings of fact on disputed factual issues including placement of a sign directing campers. We express no opinion concerning application of the New Mexico Recreational Use Statute, but leave that to the district court on remand. Plaintiffs also argued the district court abused its discretion in finding that a sign had been placed telling people where to camp. That question of fact, if relevant, remains for determination on remand.

I

We first address plaintiffs' argument that the district court erred in dismissing their claims against the State of New Mexico.[2] Unless a state expressly waives Eleventh Amendment immunity it cannot be sued for damages in federal court. See Edelman v. Jordan, 415 U.S. 651, 673 (1974). Plaintiffs' assertion that the state waived Eleventh Amendment immunity by engaging in activities and entering contracts subject to federal regulation is incorrect. See, e.g., Faust v. South Carolina State Highway Dep't, 721 F.2d 934, 940-41 (4th Cir. 1983) (acknowledging overruling of Chesapeake Bay Bridge & Tunnel Dist. v. Lauritzen, 404 F.2d 1001, 1003 (4th Cir. 1968), relied on by plaintiffs), cert. denied, 467 U.S. 1226 (1984); see also Seminole Tribe of Florida v. Florida, 116 S. Ct. 1114, 1125 (1996) (Congress had no power to unilaterally abrogate state's Eleventh Amendment sovereign immunity when the act in question was not "passed pursuant to a constitutional provision granting Congress the power to abrogate"). Plaintiffs' claims against the State of New Mexico are barred by the Eleventh Amendment.

---

[2] The district court also determined plaintiffs failed to "make allegations sufficient to assert a claim against the State defendants under the New Mexico Tort Claims Act and that there is no basis on which plaintiffs can assert a claim against the State defendants under the Federal Tort Claims Act." Appellants' App. 441-42. Because the Eleventh Amendment bars plaintiffs' claims in federal court against the State of New Mexico, we need not reach the other bases for that dismissal.

II

We next turn to plaintiffs' FTCA claim against the United States. The FTCA

provides a broad waiver of sovereign immunity for "the negligent or wrongful act or

omission" of any government employee acting in the scope of his or her employment to

the extent that a private person would be liable in similar circumstances under state law.

See 28 U.S.C. § 1346(b). This waiver of immunity is limited, however, because the

government is not liable for

> [a]ny claim based upon an act or omission of an employee of the
> Government, exercising due care, in the execution of a statute or regulation,
> whether or not such statute or regulation be valid, or based upon the
> exercise or performance or the failure to exercise or perform a discretionary
> function or duty on the part of a federal agency or an employee of the
> Government, whether or not the discretion involved be abused.

Id. § 2680(a). The second clause of the statute contains the "discretionary function

exception" at issue here.

The Supreme Court in Berkovitz v. United States, 486 U.S. 531 (1988), set out a

two-step test to determine when the discretionary function exception applies.

> The first step of the Berkovitz test requires this court to determine whether
> the challenged conduct "involves an element of judgment or choice," in
> which case it is discretionary and falls within the language of the exception,
> or whether it involves "a federal statute, regulation, or policy [that]
> specifically prescribes a course of action for an employee to follow," in
> which case the exception does not apply. Berkovitz, 486 U.S. at 536.
>
> If the conduct involves discretionary judgment under the first step of
> Berkovitz, then we must apply the second step, which requires this court to
> "determine whether that judgment is the kind that the discretionary function
> exception was designed to shield." Id. The exception protects only those

- 4 -

discretionary actions or decisions which are "based on considerations of public policy." Id. at 537. The purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." Id. at 536-37 (quoting [United States v.] Varig Airlines, 467 U.S. [797] at 814 [1984]).

Kiehn v. United States, 984 F.2d 1100, 1102-03 (10th Cir. 1993) (parallel citations omitted).

We review the district court's determination of the applicability of the discretionary function de novo, and in doing so consider not only the allegations in the complaint but the affidavits, depositions, and other evidence in the record. Gotha v. United States, 115 F.3d 176, 179 (3d Cir. 1997). Because there was no trial--the district court having entered summary judgment--we determine only whether the district court has jurisdiction; we make no judgment on the merits of the case.

The first step of the Berkovitz test requires us to determine whether there was a discretionary decision. Plaintiffs camped on the Quemado Lake Dam emergency spillway in Gila National Forest, administered by the United States Forest Service, Department of Agriculture. The State of New Mexico constructed the dam and spillway under an agreement with the Forest Service. Construction entailed cutting out a part of a mountain; a state road was then built on an easement through the spillway. On one side of the road were designated parking spots for vehicles; plaintiffs camped on the other side of the road at the bottom of the cut-away slope. The Forest Service admitted that it allowed camping in that area although no sign designated it as a camping area. In fact,

- 5 -

plaintiffs, who came to camp with two other families, set up camp there around an existing fire ring.

Plaintiffs alleged that the Forest Service and State of New Mexico, which jointly operated the Quemado Lake area, knew that large rocks falling from the mountain presented a danger to people camping there. Plaintiffs presented affidavits and deposition testimony that maintenance crews removed rocks from the area, Appellants' App. 133, 135, 137-38, 176, 222, 421, and thus defendants had notice of the danger, see also id. at 397-98. Plaintiffs asserted that the Forest Service had a duty to put up a sign warning of the danger of falling rocks, install a protective fence, or prohibit camping in the area.

The parties agree, as do we, that under the first step of the Berkovitz test there was no "federal statute, regulation, or policy [that] specifically prescribe[d] a course of action" for the Forest Service employees to follow.[3] See United States v. Gaubert, 499 U.S. 315, 322 (1991) (quoting Berkovitz, 486 U.S. at 536). The relevant Forest Service Manual (FSM) states that the policy was to "provide safe and healthful facilities for visitors,"

---

[3] The Quemado Dam was in a national forest, established for "outdoor recreation, range, timber, watershed, and wildlife and fish purposes." 16 U.S.C. § 528. The Forest Service has broad discretion to administer the forests to preserve natural resources for present and future generations. See 16 U.S.C. § 1600(6). "The Forest Supervisor is responsible for the long range sign programs on the Forest." Forest Service Manual (FSM) § 7160.43 (Appellants' App. 343); see also FSM § 7160.42b (Appellants' App. 342). The Gila Supplement provided that signs "will be allowed at appropriate locations." Appellants' App. 348.

§ 6703(3) (Appellants' App. 336).  The Gila Supplement to the Forest Service Manual

provides:

> The Gila National Forest signing objectives shall be to <u>safely guide,</u>
> <u>regulate, warn or advise the public</u> and to provide uniformity and continuity
> in signing procedures throughout the Forest including signs and posters
> erected by individuals or organizations under Special Use Permits.

FSM, Gila Supp. § 7160.2 (Appellants' App. 343) (emphasis added); <u>see</u> <u>also</u> FSM

§ 7160.2 (Appellants' App. 340) (objectives of sign and poster program are to provide

information for "the safety, enjoyment, and convenience" of forest users).

While these manuals emphasize safety and appropriate warnings they are not

specific enough to eliminate the Forest Service employees' choice regarding how to act in

particular circumstances.  As the District of Columbia Circuit noted, "[d]espite the

pervasiveness of regulation, government policies will almost always leave some room for

individual choice . . . .  But not all actions that require choice--actions that are, in one

sense, 'discretionary'--are protected as 'discretionary functions' under the FTCA."  <u>Cope</u>

<u>v. Scott</u>, 45 F.3d 445, 448 (D.C. Cir. 1995).

That brings us to the second step of the <u>Berkovitz</u> test, which requires the court to

"determine whether that judgment is of the kind that the discretionary function exemption

was designed to shield."  <u>Berkovitz</u>, 486 U.S. at 536.  "Decisions that require choice are

exempt from suit under the FTCA only if they are 'susceptible to policy judgment' and

involve an exercise of 'political, social, [or] economic judgment."  <u>Cope</u>, 45 F.3d at 448

(quoting Gaubert, 499 U.S. at 325). Justice Scalia, concurring in Gaubert, noted that the courts have had difficulty applying this "policy" aspect of the test. See 499 U.S. at 335.

One of the problems, as Cope recognized, is that nearly every governmental action is, to some extent, subject to policy analysis--to some argument that it was influenced by economics or the like. An added difficulty is that a failure to act can be a policy decision; and a failure to think about acting may still be "susceptible to policy analysis" as contemplated by Gaubert. 499 U.S. at 324-25. Further, in applying the discretionary function exception we do not consider whether the decision or nondecision was negligent or wrong. See 28 U.S.C. § 2680(a) (exception applies "whether or not the discretion involved be abused").

This permits the government to argue, as it appears to do here, that decisions--or nondecisions--that involve choice and any hint of policy concerns are discretionary and within the exception. We agree with the D.C. Circuit that "[t]his approach . . . would not only eviscerate the second step of the analysis set out in Berkovitz and Gaubert, but it would allow the exception to swallow the FTCA's sweeping waiver of sovereign immunity." Cope, 45 F.3d at 449. We must ask if the decision or nondecision implicates the exercise of a policy judgment of a social, economic or political nature. See Gotha, 115 F.3d at 180 (disavowal of "decision in fact" not determinative; test is whether nature of action taken or not taken is type susceptible to policy analysis). The Gaubert court recognized that

- 8 -

[t]here are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish. If one of the officials involved in this case drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply. Although driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy.

499 U.S. at 325 n.7.

The bulk of the cases holding that the discretionary function exception applied involved readily identifiable public policy decisions. See, e.g., Daigle v. Shell Oil Co., 972 F.2d 1527, 1537-38 (10th Cir. 1992) (decision on how to contain environmental contaminants while protecting public health involved essence of policy choices protected by discretionary function exception). In a national forest, wilderness area, or national park, there are situations in which both known and unknown hazards exist and in which a deliberate decision is made not to warn against or eliminate the hazard. See, e.g., Kiehn v. United States, 984 F.2d 1100, 1105 (decision not to place warning signs on unstable rock formations at petroglyph site was part of policy to protect natural scenery); Johnson v. United States Dep't of Interior, 949 F.2d 332, 338 (10th Cir. 1991) (Park Service decision not to post warnings concerning dangers of mountain climbing in Grand Tetons was based on policy of leaving experience as wilderness); Zumwalt v. United States, 928 F.2d 951, 953 (10th Cir. 1991) (decision to warn of danger of caves in Pinnacles National Monument in pamphlet but not to erect warning signs was part of policy to maintain trail

in wilderness state). In these situations the decision not to erect signs or eliminate a hazardous condition is justified by the policy of preserving the area in its pristine condition to protect the wilderness experience of the visitors.

This court and other circuits, however, have held decisions or nondecisions involving choice were not within the discretionary function exemption. See, e.g., Boyd v. United States, 881 F.2d 895, 898 (10th Cir. 1989 ) (Army Corp of Engineers' "failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception is properly concerned"); Smith v. United States, 546 F.2d 872, 876-77 (10th Cir. 1976) (failure to warn of the hazards of thermal pool in national park); Gotha, 115 F.3d at 181-82 (failure to provide safeguards on a footpath on a Navy underwater tracking range); Cope, 45 F.3d at 451-52 (failure to post adequate warning signs on road maintained by the National Park Service). In each of these cases the court could not perceive in the record before it any significant social, economic or political policy in the action or inaction that allegedly contributed to the injury giving rise to the lawsuit. In these cases a specific hazard existed, distinct from the multitude of hazards that might exist in, for example, a wilderness trail through a national park or forest, where warnings might detract from the area's character or safety structures might be costly.

At oral argument we inquired whether the government defended its inaction in the instant case on the basis of economics--a budgetary crunch or the like. The response was

that no economic factors influenced the decision or nondecision. Cf. Domme v. United States, 61 F.3d 787, 793 (10th Cir. 1995) (Henry, J., concurring) ("insufficient government resources alone do not a discretionary function make"). Based on the record before us, here there was a specific hazard distinct from other hazards generic to a national forest. A cut was made through a mountainside resulting in a slope from which boulders rolled down from time to time. The boulders landed near the road that had been made through the cut for the specific purpose of providing ingress to and egress from a nearby lake. The Forest Service encouraged vehicles to park along this road by providing marked parking lines, see Appellants' App. 175, and various improvements, Appellees' Supp. App. 19. It did not discourage individuals from selecting the area plaintiffs chose for camping, and, indeed, campers had used the area for many years. No literature or signs warned against the hazard of the rolling boulders.

A warning sign or a sign prohibiting camping at the site because of the danger would cost little. A protective fence might be costly, but the government does not defend the case based on an economic decision. The district court found that the decision not to warn was a policy decision that furthered the Forest Service objective of "resource allocation, forest management, and preserving a natural state of appearance of the Gila National Forest." Appellants' App. 442. But our review of the record reveals no evidence by the government of any social or political justification. It simply relies on the presumption that there was some policy reason for the failure to do anything at the site.

In Gotha, the Third Circuit stated that the routine safeguard on a footpath at issue there was

> a mundane, administrative, garden-variety, housekeeping problem that is about as far removed from the policies applicable to the Navy's mission as it is possible to get . . . . It is difficult to conceive of a case more likely to have been within the contemplation of Congress when it abrogated sovereign immunity than the one before us.

115 F.3d at 181-82. In Cope, the D.C. Circuit rejected claims of "engineering judgment" and "aesthetic considerations," holding that having "chosen to manage the road [through a park] in a manner more amenable to commuting through nature than communing with it . . . and having taken steps to warn users of dangers inherent in that use, the Park Service cannot argue that its failure to ensure that those steps are effective involves protected 'discretionary' decisions." 45 F.3d at 452.

At this stage the government has not shown how failure to warn or protect from the danger of a boulder rolling down the man-made slope implicated "political, social, or economic decisions of the sort that the exception was designed to protect." Id. Thus, we REVERSE the district court's dismissal of plaintiffs' claims against the federal government. We AFFIRM its dismissal of plaintiffs' claims against the State of New Mexico. We REMAND for further proceedings in accordance with this opinion.

No. 95-2281, <u>Duke v. Department of Agriculture</u>

Briscoe, Circuit Judge, concurring and dissenting:

I concur in part and dissent in part. I agree that plaintiffs' claims against the State of New Mexico are barred by the Eleventh Amendment. However, contrary to the majority, I would affirm the district court's dismissal of the claim against the United States under the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a).

The facts of this case are tragic. Six-year-old Joel Ray Duke was severely injured when a boulder rolled down an embankment and crushed his skull while he was camping with his family in the emergency spillway for Quemado Lake Dam during a heavy rainstorm. As the majority notes, it would have cost little to erect a warning sign or a sign prohibiting camping. However, application of the discretionary function exception does not depend on the magnitude of the injury or the ease with which it could have been prevented. When the exception applies, it applies without regard to whether the discretion involved is abused. 28 U.S.C. § 2680(a).

We use the two-prong analysis of <u>Berkovitz v. United States</u>, 486 U.S. 531 (1988), to determine whether the discretionary function exception applies to cases brought pursuant to the FTCA. We first determine "whether the action at issue was one of choice for the government employee" or agency. <u>Tippett v. United States</u>, 108 F.3d 1194, 1196 (10th Cir. 1997). I agree with the majority that this

first step is satisfied in this case. The second prong of the <u>Berkovitz</u> test requires an inquiry into whether the judgment at issue is of the type the exception is designed to shield. <u>Id.</u> The focus of our analysis is the nature of the action taken and whether it is subject to policy analysis. Only decisions susceptible to policy analysis are protected by the discretionary function exception. <u>Id.</u> at 1197-98.

Where the record shows policy considerations implicitly or explicitly weigh in the decision not to erect warnings, the discretionary function exception applies without regard to whether the specific danger involved was known. <u>See</u> <u>Zumwalt v. United States</u>, 928 F. 2d 951, 955-56 (10th Cir. 1991); <u>see also</u> <u>Kiehn v. United States</u>, 984 F.2d 1100, 1104 (10th Cir. 1993). Thus, where the decision not to place warning signs is part of some "overall policy," the discretionary function exception applies. <u>E.g.</u>, <u>Kiehn</u>, 984 F.2d at 1104; <u>Zumwalt</u>, 928 F.2d at 955; <u>see</u> <u>Childers v. United States</u>, 40 F.3d 973, 975 (9th Cir. 1995) (failure to place signs part of overall park service plan; discretionary function exception applies).

The majority rejects the government's argument that the second prong of the <u>Berkovitz</u> test is satisfied, finding "[a]t this stage the government has not shown how failure to warn or protect from danger of a boulder rolling down the man-made slope implicated 'political, social, or economic decisions of the sort that the exception was designed to protect.'" Majority op. at 12. Thus, the majority places the burden of establishing the second prong of the discretionary

-2-

function exception on the government. The majority also looks to whether the particular injury involved actually implicated policy concerns. I respectfully disagree with the majority's approach in both instances. First, when the challenged government action passes the first prong of the Berkovitz test--when the government agent is permitted to exercise discretion--"it must be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Gaubert, 499 U.S. at 324-25. In relying on the government's failure to present proof, the majority ignores the presumption to which the government is entitled under Gaubert. In addition, by concentrating on whether the failure to warn of a particular danger was actually based on policy reasons, the majority ignores that our inquiry is whether the type of action in question is "susceptible to policy analysis," and not whether policy analysis is the actual reason for the decision in question. "The focus of the inquiry is not on the agent's subjective intent in exercising the discretion . . . but on the nature of the actions taken and on whether they are susceptible to policy analysis. Id. at 325. Consequently, "[t]he lack of record evidence describing an analysis of public policy factors in the . . . decision not to

post warnings," which the majority relies on, "is immaterial." Kiehn, 984 F.2d at 1105.

The government asserts broadly that its discretionary decision regarding "warning signs, fences, or other closures require[s] consideration of public policy factors." Appellees' br. at 17. Cf. Childers v. United States, 841 F. Supp. 1001, 1016 (D. Mont. 1993), aff'd 40 F.3d 973 (9th Cir. 1995) (decisions "inherently require" balancing of public policy). The government offers no policy-specific considerations involved in the challenged decisions of the forest service. Rather, the government rests on the presumption of policy-based reasoning as described in Gaubert and applied by this court in Kiehn and Daigle v. Shell Oil Co., 972 F.2d 1527, 1542 (10th Cir. 1992). Plaintiffs do not argue they have presented evidence sufficient to overcome this presumption.

Two particular cases in this circuit stand out as arguably inconsistent with giving the government the benefit of a presumption of policy-based reasoning in failing to erect warning signs. In Smith v. United States, 546 F.2d 872, 874 (10th Cir. 1976), plaintiff fell into a super-heated thermal pool at Yellowstone National Park. He filed a FTCA claim, alleging the park service failed to provide adequate warnings and failed to erect guardrails and other precautions. Despite the government's contention that the decision not to provide warning signs implemented a policy to conserve the scenery and leave the area undeveloped, this

court held the discretionary function exception did not apply. Id. at 876-77. Although our current jurisprudential approach to the discretionary function exception would not follow the same reasoning, we have not overruled or criticized Smith, but instead have said it stands for the limited proposition that failure to warn resulting only from failure to recognize a potentially dangerous condition does not implicate a policy analysis and does not invoke the discretionary function exception. See, e.g., Zumwalt, 928 F.2d at 955 n.5; see also Summers v. United States, 905 F.2d 1212 (9th Cir. 1990) (failure to warn based on failure to consider danger, rather than direct choice not to erect sign for policy reasons not protected as discretionary function). The present case does not come within the rule we extract from Smith, a rule which we have yet to apply. See Weiss v. United States, 889 F.2d 937, 939 n.2 (10th Cir. 1989) (fact that failure to warn was result of failure to consider issue was of no moment where policy-based decision implicitly precluded warning). Plaintiffs' case here is premised on the allegation that the government had knowledge of the dangerous condition of the area in which plaintiffs camped but negligently failed to act. They do not maintain, as the Smith rule would require, that the government simply failed to detect the danger without regard to policy considerations. In ruling on the government's initial motion for summary judgment, the district court ruled the evidence established the government knew of the dangerous condition.

In <u>Boyd v. United States</u>, 881 F.2d 895 (10th Cir. 1989), a swimmer was injured by a boat and claimed the government had a duty to warn of the danger since the government permitted boating in known swimming areas. This court rejected the government's argument that a decision whether to warn was a policy decision linked to the decision of what activities would be allowed in the area. This court found the decision regarding warnings was independent of the decision regarding permissible activities. In <u>Boyd</u>, the government apparently identified no policy directly related to a failure to warn swimmers of known dangers. Like <u>Smith</u>, we have consistently distinguished <u>Boyd</u> in subsequent cases, while simultaneously finding it good law on the proposition that when no policy considerations could be identified in connection with a failure to warn, the discretionary function exception is inapplicable. <u>See</u>, <u>e.g.</u>, <u>Zumwalt</u>, 928 F.2d at 955 n.6. However, <u>Boyd</u> and the rule now extracted from <u>Boyd</u> do not integrate the presumption of policy-based reasoning subsequently explained by the Supreme Court in <u>Gaubert</u> and applied by this court in <u>Kiehn</u>.

Resolution of this case turns on whether we are willing, as I am, to permit a presumption that the government's inaction was based in policy as required by the Supreme Court in <u>Gaubert</u>, or whether we are willing instead, as the majority is, to hold absence of affirmative evidence of policy reasoning in the record defeats the discretionary function exception as in this court's earlier case of <u>Boyd</u>. Even

if Boyd remains good law, after Gaubert it can be readily distinguished from this case. In Boyd, the government did not proffer and the court could not find that policy-based reasoning could be involved in the decision not to erect the warning sign at issue. Here, the government does not proffer a specific policy-based reason for the decision at issue but rather relies on the general statutes and regulations concerning forest management to argue its decisions regarding signage and safety are within the realm of discretion bounded by these statutes and regulations.

Guided by the language in Gaubert, 499 U.S. at 324-25, that "[f]or a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded" in policy, I would affirm. Plaintiffs' theory of liability is premised on the government's knowledge of the danger. We cannot say decisions concerning how various dangers on public lands are ameliorated are the type of actions that cannot be said to be grounded in social, economic, or political policy. It is enough that forest service policies on signage and safety are sufficiently broad to permit the forest service to take public policy goals into account. See Gaubert, 499 U.S. at 324-25; Childers, 40 F.3d at 974 n.1 (citing Gaubert for proposition that "[a]ll that is required is that the applicable statute or regulation gave the government agent discretion to take policy goals into account"). In

-7-

applying the second prong of the <u>Berkovitz</u> test, it is critical to keep in mind its purpose to "prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." 486 U.S. at 536-37. Considering the manifold potential dangers in public lands, whether arising by natural processes or, as here, by a combination of natural processes and human intervention, there is an element of judicial second-guessing of an administrative decision in a judicial determination concerning which dangers limited resources should be used to addressed.

I would affirm the district court's dismissal of this case.