Emily Moody BOYD, Administratrix of the Estate of Clyde Alva Boyd, III, and Emily Moody Boyd, Individually, Plaintiff,

v.

The UNITED STATES of America, ex rel. the UNITED STATES ARMY CORPS OF ENGINEERS, Defendant.

No. 85–93–C.

United States District Court, E.D. Oklahoma.

Jan. 6, 1986.

Harry Scoufos, Salisaw, Okl., Glen D. Johnson, Okemah, Okl., for plaintiff.

Ralph F. Keen, Asst. U.S. Atty., Muskogee, Okl., Douglas B. Ruddle, Dist. Counsel, Tulsa, Okl., for defendant.

## ORDER

H. DALE COOK, Chief Judge.

Now before the Court for its consideration is the motion of the United States of America (United States) to dismiss for failure to state a claim for which relief can be granted, for the reason that plaintiff's action is barred by the discretionary function exception to the Federal Tort Claims Act, 28 U.S.C. § 2680(a), and for the further reason that plaintiff's complaint is barred by the Oklahoma Recreational Use Statute, 2 Okla.Stat. § 1301–315(D) (1981).

In the alternative, defendant moves for summary judgment in its favor on the grounds that there are no material issues of fact and it is entitled to judgment as a matter of law.

Plaintiff brings this action under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (FTCA), and under 28 U.S.C. § 1346(b), seeking damages against the United States for the death of her husband, Clyde Alva Boyd III. On September 6, 1982, decedent went to Tenkiller Lake for recreational purposes, to an area known as Area B near Crappie Point in Tenkiller State Park. At Crappie Point, decedent entered the water to snorkel. Decedent snorkeled about 25 or 30 feet from the shore and was struck by a boat and was killed.

Tenkiller State Park is operated by the State of Oklahoma under a lease from the United States. The land is under lease to the State; however, the water is under the jurisdiction and control of the United States, through the Corps of Engineers.

The parties stipulate that at this particular location, there were no warning signs posted, no buoys or flags in the water or other indication that the area was hazardous to swimming, nor was the area marked or designated as a safe site for swimming. There were no signs designating the purpose of the area.

The applicable federal regulation regarding this area is the Southwest Division Regulation 1130–2–7; it is the project operation manual for the administration of res-

ervoir lands and water under the supervision of the Corps of Engineers. It provides in pertinent part:

5-4. *Zoning.* Lakes will be zoned to protect the public and to promote safe water oriented sports and other activities. Zoned areas will be held to minimum number and size in order to permit the greatest use of the lake by all interests. Permanent zoning will be generally limited to swimming, boat launching, commercial dock areas, heavy use areas where congestion exists, and areas of danger. Zoning for aircraft will be in accordance with the applicable section of Title 36 CFR.

5-5. *Marking.* Areas to be zoned will be clearly marked with buoys complying with the Uniform State Waterway Marking System. Buoys will contain the minimum information and be sufficiently legible for the using public to readily determine the zone restrictions. Channels will be marked with nun- and can-type buoys or midchannel marker buoys. Areas where boats are prohibited will be marked with appropriate buoys. When possible buoys should be connected by lines or cable to prevent boats from entering the area. For public safety all the uncleared areas of the reservoir will be clearly and permanently marked so that the public will be adequately advised that the areas are not cleared and that only low speed boating is permitted. Marking and warning devices which will be functional under fluctuating water surfaces, unmistakable as to intent, and economical to install and maintain will be designed. This design should not be limited to devices and methods previously used.

In her complaint, plaintiff brings forth the following claims against the United States:

"The injuries to the Plaintiff's decedent, resulting in his death, were directly and proximately caused by the negligence and want of care of the Defendant in the following particulars, to wit:

(a) That said Defendant failed to warn the Plaintiff's decedent of the existing and impending danger in that no signs of warnings were posted indicating that boats were permitted in the area;

(b) In that the Defendant failed to warn its invitees of the existing and impending dangers and hazards on the premises;

(c) That said Defendant failed to exercise reasonable and ordinary care to keep the premises in a reasonable and safe condition for the benefit of the persons lawfully using the same;

(d) That said Defendant failed to erect or install adequate barriers to keep motorized vehicles away from the diving, swimming, and snorkeling area of Crappie Point;

(e) That the Defendant created a dangerous situation and premises without taking reasonable care for the safety of its patrons and invitees; and,

(f) In failing to provide adequate personnel for guarding for the safety of the patrons and users of the project and for insuring the safe operation of the same."

28 U.S.C. § 1346(b) authorizes suits against the United States for damages:

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The broad waiver of sovereign immunity is limited by the discretionary function exception of 28 U.S.C. § 2680(a), which provides:

Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a

statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

To the extent that any alleged act of negligence asserted under the FTCA falls within the exception delineated by § 2680(a), this Court lacks subject matter jurisdiction and the claims must be dismissed. *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953).

The cases of *Dalehite, supra,* and *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984), are the primary decisions for determining the discretionary nature of a governmental agency's or employee's conduct. In *Dalehite,* the court said:

> [T]he 'discretionary function or duty' that cannot form a basis for suit under the Tort Claims Act includes more than the initiation of programs and activities. It also includes determinations made by executives or administrators in establishing plans, specifications or schedules of operations. Where there is room for policy judgment and decision there is discretion. It necessarily follows that acts of subordinates in carrying out the operations of government in accordance with official directions cannot be actionable. 346 U.S. at 35–36, 73 S.Ct. at 968 (footnote omitted).

The Court is mindful that it is the Tenth Circuit's interpretation of the Supreme Court decisions that is binding on this Court and becomes the rule of the case. In reviewing the case law, it is apparent that the Supreme Court's and the Tenth Circuit's interpretation of § 2680(a) has not followed a clear line.

In the instant case, plaintiff Emily Boyd argues that the circuit courts have significantly narrowed the definition of discretionary function. Plaintiff asserts that this Court is bound by the decision of *Smith v.*

*United States,* 546 F.2d 872 (10th Cir.1976). Plaintiff alleges that her preliminary claims are based upon the United States' failure to warn her decedent of the dangerous condition of swimming in this area. In *Smith* a fourteen-year-old boy fell into a super-heated thermal pool in Yellowstone National Park. Yellowstone was divided into developed and undeveloped areas. In the developed areas there were boardwalks and paths constructed and maintained for visitors by the Park Service. There were warning signs posted in the developed area warning visitors of the dangerous condition caused by the thermal pools. The Smith family left the developed area and entered an undeveloped area where there were no boardwalks or warning signs. However, the family decided to follow a worn path toward the area of the thermal activity. The ground gave way and the Smith's boy was severely burned. The Tenth Circuit said that the discretionary exception doctrine must be narrowly construed. The decision as to whether to post warning signs must be viewed separately from the decision to develop only certain areas of Yellowstone. It held:

> [W]e are convinced that the Government's decision, as a landowner, not to warn of the known dangers or to provide safeguards cannot rationally be deemed the exercise of a discretionary function. 546 F.2d at 877 (footnote omitted).

Subsequently in *Miller v. United States,* 710 F.2d 656 (10th Cir.), *cert. denied,* 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983), an action was brought against the Department of Transportation for personal injuries received by the Millers resulting from an automobile accident. The Millers were driving a Volkswagen "bus" in Colorado when the vehicle skidded off the slippery roadway onto a narrow shoulder and down a steep embankment. As a result, plaintiff, Karen Miller, became a paraplegic. Plaintiffs alleged that the United States was negligent in inspecting construction plans and in carrying out its duty of supervising, inspecting and monitoring safety features. In particular, they alleged

the United States was negligent in that it failed to place signs and allowed the highway to be deceptively marked so as to increase danger at the accident site, and also failed to install a guardrail or other device to correct the defective shoulder.

In *Miller*, the regulation under which highway construction was approved by the United States provided the following standard:

> Approved projects must be 'conducive to safety, durability and economy of maintenance ... [and] constructed in accordance with standards best suited to accomplish the foregoing objectives and to conform to the particular needs of each locality.' 23 U.S.C. § 109(a)(1), (2). 710 F.2d at 660.

In construing the term "discretionary duty", the Tenth Circuit stated the following test:

> "[I]f a governmental official in performing his statutory duties must act without reliance upon a *fixed or readily ascertainable standard*, the decision he makes is discretionary and within the [discretionary function exception]. Conversely, if there is a standard by which his action is measured, it is not within the exception." 710 F.2d at 663 (quoting *Barton v. United States*, 609 F.2d 977, 979 (10th Cir.1979)).

One year following the *Miller* decision, the Supreme Court decided *Varig Airlines, supra*. In *Varig Airlines*, the Supreme Court in response to the plaintiff's argument that the discretionary exception doctrine had been substantially eroded since *Dalehite*, stated:

> While the Court's reading of the Act admittedly has not followed a straight line, we do not accept the supposition that *Dalehite* no longer represents a valid interpretation of the discretionary function exception. 104 S.Ct. at 2764.

The Supreme Court clarified the doctrine by listing factors the courts are to consider in assessing whether the conduct is discretionary:

> First, it is the nature of the conduct, rather than the status of the actor, that governs whether the discretionary function exception applies in a given case .... Thus, the basic inquiry concerning the application of the discretionary function exception is whether the challenged acts of a Government employee—whatever his or her rank—are of the nature and quality that Congress intended to shield from tort liability.
>
> Second, whatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. 104 S.Ct. at 2765 (footnote omitted).

Citing *Varig Airlines, Dalehite* and *Miller* the United States urges that the discretionary function exception to this Court's jurisdiction be applied in the case at bar. The plaintiff relies on *Dalehite* and *Smith* and distinguishes *Varig Airlines*. Plaintiff asserts that failure to post warning signs constitutes an operational decision made by the Corps of Engineers. The United States contends that the zoning and marking of areas is a discretionary function in carrying out the overall master plan of promoting public safety, use and access, as well as scenic values and wildlife habitat.

The Tenth Circuit has held that if an alleged failure to warn goes to the manner of exercise of a discretionary function, then the conduct is immunized from suit by § 2680(a). *See Miller, supra*, 710 F.2d at 665. Further, this Court is directed by the language in the Supreme Court's 1984 opinion:

> [W]hatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. *Varig Airlines*, 104 S.Ct. at 2765 (footnote omitted).

The *Dalehite* court, after an analysis of the legislative history of the FTCA, concluded that Congress intended no waiver of sovereign immunity where no negligence was shown on the part of an individual

government employee. The purpose of this exception to the waiver of sovereign immunity was to prevent citizens from challenging the validity of discretionary acts through tort suits. 346 U.S. at 30, 73 S.Ct. at 965.

The Court finds, from review of the varied case law, that the challenged conduct of the United States, through the Corps of Engineers, is a discretionary act which falls outside the waiver of its sovereign immunity. The Court finds that the case at bar falls within the reasoning espoused by the Tenth Circuit in *Miller, supra.* For this reason, defendant's motion to dismiss for want of subject matter jurisdiction must be granted.

Since the Court finds the action is barred by the discretionary exception doctrine, it need not reach the merits of the United States' alternative ground for dismissal; i.e., the complaint is barred by the Oklahoma Recreational Use Statute.

Therefore, premises considered, it is the Order of the Court that the motion of the defendant United States to dismiss for lack of subject matter jurisdiction is hereby granted.