881 F.2d 895
 Emily Moody BOYD, Administratrix of the Estate of Clyde Alva
Boyd, III, and Emily Moody Boyd, Individually,
Plaintiff-Appellant,
v.
The UNITED STATES of America, ex rel. the UNITED STATES
ARMY, CORPS of ENGINEERS, Defendant-Appellee.
 No. 86-1618.
 United States Court of Appeals,
Tenth Circuit.
 Aug. 2, 1989.
 
 Harry Scoufos, Sallisaw, Okl., (Glen E. Johnson, Okemah, Okl., with him on the brief), for plaintiff-appellant.
 Ralph F. Keen, Asst. U.S. Atty., (Roger Hilfiger, U.S. Atty., with him on the brief), Muskogee, Okl., for defendant-appellee.
 Before MCKAY, LOGAN, and TACHA, Circuit Judges.
 LOGAN, Circuit Judge.
 
 
 1
 The district court dismissed the suit of plaintiff Emily Moody Boyd against the United States for lack of subject matter jurisdiction, holding that it was barred by the discretionary function exception of the Federal Tort Claims Act (FTCA), 28 U.S.C. Sec. 2680(a). Boyd v. United States, 631 F.Supp. 814 (E.D. Okla.1986). On appeal, Boyd argues that the challenged governmental activity does not fall within that exception, and thus the government is subject to suit. She also argues that the government is not immunized from suit by an Oklahoma recreational use statute, Okla.Stat. tit. 2, Sec. 1301-315(D), or a federal flood control statute, 33 U.S.C. Sec. 702c. We agree that neither the FTCA nor 33 U.S.C. Sec. 702c bars suit in this case, but we remand for further consideration of the Oklahoma statute.
 
 
 2
 The facts of this case are largely undisputed. In September 1982, Clyde Alva Boyd, deceased husband of plaintiff Emily Boyd, went to Tenkiller State Park in Oklahoma. While snorkeling in Tenkiller Lake some twenty-five or thirty feet offshore, near an area called Crappie Point, Boyd was struck by a boat and killed.
 
 
 3
 Boyd alleges that the Crappie Point area was "held out to be and generally known to be used for a swimming, snorkeling, and diving area of the lake." I R. doc. 1 at 2 p IV.[1] The parties stipulated that there were no signs or other markers at Crappie Point warning boaters or swimmers of potential hazards. The State of Oklahoma operates Tenkiller State Park under a lease from the United States, but the lake is under the jurisdiction and control of the United States, through the Army Corps of Engineers (COE).
 
 
 4
 Boyd filed suit against the United States, alleging that the COE negligently had failed to warn swimmers that boats were permitted in the area of Crappie Point, or alternatively, that the COE was negligent in not zoning the area so as to restrict the entry of boats. The district court found, and neither party disputes, that Southwest Division Regulation (SDR) 1130-2-7, which governed the COE's responsibilities for administering reservoir lands and water under its supervision, was applicable in this case.[2] After reviewing the cases dealing with the discretionary function exception, the district court concluded that the government conduct challenged here fell within that exception. The court held that the decision to zone and mark public recreation areas, as embodied in SDR 1130-2-7, was discretionary and relying on our decision in Miller v. United States, 710 F.2d 656, 665 (10th Cir.), cert. denied, 464 U.S. 939, 104 S.Ct. 352, 78 L.Ed.2d 316 (1983), reasoned that "if an alleged failure to warn goes to the manner of exercise of a discretionary function, then the conduct is immunized from suit by Sec. 2680(a)." Boyd, 631 F.Supp. at 817.
 
 
 5
 * The FTCA waives the sovereign immunity of the United States for negligence to the extent that a private person would be liable in like circumstances under local law. 28 U.S.C. Sec. 1346(b). This waiver, however, is limited by the discretionary function exception, which prohibits claims against the United States "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Id. Sec. 2680(a).
 
 
 6
 The United States Supreme Court recently "restat[ed] and clarif[ied] the scope of the discretionary function exception" by setting forth certain principles to guide the application of the exception. Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 1959, 100 L.Ed.2d 531 (1988). First, a court must consider whether the challenged action "is a matter of choice for the acting employee," or whether the statute, regulation, or policy at issue prescribes a specific course of conduct. Id. 108 S.Ct. at 1958. In the latter instance, the exception has no application since an employee must "adhere to the directive" and no discretion is involved. Id. at 1958-59.
 
 
 7
 If a decision does involve an element of judgment, a court then must determine whether it is of the kind Congress intended to shield through the exception. In this vein, the Court noted that Congress only intended to insulate "governmental decisions based on considerations of public policy," id. at 1959; that is, those decisions " 'grounded in social, economic, and political policy.' " Id. (quoting United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984)). Thus, if an agency's "policy leaves no room for an official to exercise policy judgment in performing a given act, or if the act simply does not involve the exercise of such judgment, the discretionary function exception does not bar a claim that the act was negligent or wrongful." Id. 108 S.Ct. at 1964. To support this latter proposition, the Court cited Indian Towing Co. v. United States, 350 U.S. 61, 69, 76 S.Ct. 122, 127, 100 L.Ed. 48 (1955), in which the Court held that a negligent failure by the government to maintain a lighthouse in proper working order was actionable even though the initial decision to install it was a discretionary policy judgment. See also Berkovitz, 108 S.Ct. at 1959 n. 3 (failure to maintain the lighthouse "did not involve any permissible exercise of policy judgment").
 
 
 8
 In the instant case, we believe the decision to zone lakes, including which parts to zone and which parts to leave unrestricted, constitutes an exercise of discretion involving competing economic and social considerations. The government officials were required to strike a balance between public safety, including the amount of funds to expend in promoting that objective, and recreational use, allowing the greatest possible variety of unrestricted use by the public. See SDR 1130-2-7. Thus, the COE's decision not to zone the Crappie Point area for swimming was discretionary.
 
 
 9
 The government argues that because it was a discretionary decision not to zone Crappie Point, "the regulations in force at the time [ ] also meant that no warning signs or other safety devices would be installed in the area." Brief of Appellee at 6. In other words, the government asserts that a discretionary decision not to zone an area necessarily makes discretionary a decision that nothing be done there, regardless of potential hazards. We do not agree. We decline to extend the veil of discretion so that it covers the failure to warn swimmers at Crappie Point of potential hazards, or the failure to prohibit swimming in that area altogether.
 
 
 10
 An alleged failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned. The government's alleged omission in this case "simply does not involve the exercise of such judgment." Berkovitz, 108 S.Ct. at 1964; see Indian Towing, 350 U.S. at 69, 76 S.Ct. at 127; see also Ducey v. United States, 713 F.2d 504, 515 (9th Cir.1983) ("While the government's decision to encourage recreation at Eldorado Canyon is the exercise of a discretionary function, the government's duty to warn of or guard against hazards resulting from that decision may nonetheless be actionable"); Smith v. United States, 546 F.2d 872, 876-77 (10th Cir.1976) (government's failure to warn about hazards of thermal heated pool not discretionary, even though decision to leave some park areas undeveloped and hazardous was discretionary); cf. Davis v. United States, 716 F.2d 418, 423 (7th Cir.1983) (government did not argue its failure to warn of dangerous diving conditions was discretionary).
 
 
 11
 In ruling that this case fell within the discretionary function exception, the district court apparently believed that our decision in Miller v. United States, 710 F.2d 656 (10th Cir.1983), mandated such a result. That case involved an alleged failure to warn of dangerous highway conditions where the federal government supervised and helped fund state construction and maintenance of highways. Although the federal government had promulgated certain building and safety regulations for the states to follow, we held that the administration and enforcement of those regulations was infused with such a "welter of public policy considerations," id. at 665, that the alleged government omission in that case fell within the discretionary exception. Id. at 662-66. Further, we distinguished our decision in Smith, 546 F.2d 872, on the grounds that that case "was premised on the direct acts or omissions of the Government, through its agents as a landowner." Miller, 710 F.2d at 665 n. 16. The claim in the present case, as in Smith, is based on an alleged direct omission by the government as landowner. Additionally, as previously discussed, the act at issue here did not involve any considerations of public policy. We hold that Boyd's claim is not barred by the discretionary function exception to the FTCA.[3]
 
 II
 
 12
 The government next argues that an Oklahoma recreational use statute immunizes it from suit in this case. See Klepper v. City of Milford, 825 F.2d 1440, 1443 (10th Cir.1987) (United States not liable under FTCA if comparably situated person would be immunized by state statute). While the district court did not find it necessary to decide this issue, at this court's request it has been briefed by both parties.
 
 
 13
 Okla.Stat.Ann. tit. 2, Sec. 1301-315, provides in pertinent part as follows:
 
 
 14
 "B. An owner or lessee who provides the public with a park area for outdoor recreational purposes owes no duty of care to keep that park area safe for entry or use by others, or to give warning to persons entering or going on that park area of any hazardous conditions, structures or activities thereon....
 
 
 15
 C. This section shall not apply if there is any charge made or usually made by entering or using such park area, or any part thereof, or if any commercial or other activity for profit is conducted on such park area, or any part thereof.
 
 
 16
 D. An owner of land or water area leased to the state for outdoor recreational purposes owes no duty of care to keep that land or water area safe for entry or use by others, or to give warning to persons entering or going on that land or water of any hazardous conditions, structures or activities thereon."
 
 
 17
 This statute apparently has not been construed by the Oklahoma courts, but it is more narrowly drawn than the model recreational use statute Kansas adopted and we construed in Klepper. Because the government concedes that the water area of the park was not leased to the state, Supplemental Brief of Appellee at 14, and the death occurred offshore, subsection D does not appear to apply here. Thus, this leaves subsections B and C for our consideration.
 
 
 18
 The government asserts that it receives no monies from the State of Oklahoma for the lease of the park "nor does the United States operate any commercial activities for profit on the lake." Id. at Exh. A p. 1 (emphasis added). Boyd, however, asserts that the COE "receives a percentage of gross sales from many concessionaires and charges various fees to lake users." Appellant's Reply to Supplemental Brief of Appellee at 2. We believe a development of the facts is necessary to a resolution of this issue. If indeed the COE charges lake user fees or receives some revenue from commercial activities on the areas controlled by the COE, subsection C clearly applies to knock out the immunity provided by subsection B.[4] This may not be the only construction of which the statute is susceptible that could subject the United States to potential liability. Cf., e.g., Ducey, 713 F.2d at 509-15. Thus, on remand we direct the district court to consider and resolve whether the United States is protected from liability by the Oklahoma statute.
 
 III
 
 19
 The government also relies on the Supreme Court's decision in United States v. James, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), for the proposition that the immunity provision of the Flood Control Act, 33 U.S.C. Sec. 702c, exempts it from liability in this case. That provision provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place." Apparently Tenkiller Lake was created by the COE for flood control purposes. We will assume that this is the case for purposes of the following discussion.[5]
 
 
 20
 In James, recreational users of a reservoir were injured or killed w hen they were swept through flood gates opened by the COE for flood control purposes. 478 U.S. at 599, 601, 106 S.Ct. at 3118, 3119. The Court held that 33 U.S.C. Sec. 702c immunized the government from suit for any damages ca used by floods or flood waters, and thus the government was immune from the claims in that case. Id. at 612, 106 S.Ct. at 3124. There is some broad language in James, but the Court appeared to distinguish cases where damage § occur in waters not being actively used for flood control purposes, by tw ice noting that the district and appellate courts in that case had found th at the waters were being released for flood control purposes at the time of the accident. Id. at 605 & n. 7, 610, 106 S.Ct. at 3121 & n. 7, 3123-24. Indeed, the Supreme Court quoted a portion of a Fourth Circuit case, and h ighlighted certain language, where the court had stated "[i]f the plaintiff could prove damage to his farm as a result of the dam's operation as a rec reational facility without relation to the operation of the dam as a flood control project, he would avoid the absolute bar of Sec. 702c." Id. at 605 n. 7, 106 S.Ct. at 3121 n. 7 (quoting Hayes v. United States, 585 F.2d 701, 7 02-03 (4th Cir.1978)).
 
 
 21
 Notwithstanding this distinction made in James, the Ninth Circuit recently ruled that Sec. 702c barred a negligence suit against the government for injuries sustained as a result of diving into a flood control lake also used for recreational purposes. See McCarthy v. United States, 850 F.2d 558, 562 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 1312, 103 L.Ed.2d 581 (1989). The court reached this result primarily through adherence to a standard set forth in pre-James cases from that circuit, which dictated that Sec. 702c applies unless damages resulting from the operation of a federal flood control project are " 'wholly unrelated to any Act of Congress authorizing expenditures of federal funds for flood control, or any act undertaken pursuant to any such authorization.' " Id. 850 F.2d at 562 (quoting Morici Corp. v. United States, 681 F.2d 645, 647 (9th Cir.1982), quoting Peterson v. United States, 367 F.2d 271, 275 (9th Cir.1966)) (emphasis added); see also James, 478 U.S. at 605 n. 7, 106 S.Ct. at 3121 n. 7. Thus, the McCarthy court concluded that the diving injuries sustained in that case were not "wholly unrelated" to Congress' flood control efforts. 850 F.2d at 563.[6]
 
 
 22
 For our part, we cannot agree that Congress intended to stretch the shield of flood control immunity to the limits contemplated by the "wholly unrelated" standard. This standard essentially creates a "but for" connection between flood control activity and damages occurring at a flood control project--if the injury would not have occurred but for the creation of a flood control lake, the government is immune. Such a connection between flood control activity and recreational injuries is too attenuated to warrant the invocation of Sec. 702c. The government has presented no evidence that Congress intended Sec. 702c to cover this situation. We believe Congress' concern was to shield the government from liability associated with flood control operations, see James, 478 U.S. at 608, 106 S.Ct. at 3122-23, not liability associated with operating a recreational facility. Without attempting to delineate for every conceivable situation the necessary link between flood control activities and injuries sustained at a flood control project before Sec. 702c immunity applies, in the present case we hold that the requisite nexus has not been established.
 
 
 23
 In no way are we passing on the government's culpability for negligence in this particular incident. We simply hold that plaintiff is not barred from suing the government on the grounds considered in this appeal. The judgment of the district court is REVERSED and this case is REMANDED for proceedings consistent herewith.
 
 
 24
 TACHA, Circuit Judge, dissenting.
 
 
 25
 I respectfully dissent. The majority here decides that the decision whether to zone a particular area "constitutes an exercise of discretion involving competing economic and social considerations" and therefore concludes that the decision not to zone the Crappie Point area for swimming was discretionary. Thus, in the absence of the duty to warn upon which the majority relies, the discretionary function exception to governmental liability would apply here to exempt the United States from liability. The law in this circuit clearly requires that the duty to warn of preexisting, natural hazards be considered separately from the initial zoning decision in determining the applicability of the discretionary function exception. See Smith v. United States, 546 F.2d 872, 877 (10th Cir.1976). When there are competing economic and social considerations, as concededly exist here, I cannot agree that all decisions not to zone carry a corresponding duty to warn of all possible hazards that might result from the decision not to zone. That, however, is the effect of the majority holding in this case.
 
 
 26
 Zoning decisions inherently involve the identification of areas appropriate for particular uses. When government officials exercise their authority to zone, they affirmatively identify areas in which specific activities can occur. In this case, for example, one specified area was designated for swimming only. Inherent in a zoning decision is the premise that the approved use or uses are appropriate, safe, and consistent with the government's policy considerations, while other uses are not. The decision not to zone carries with it the implicit policy determination that the government will not warn of all conjectural hazards that may result from mixed uses of areas when those uses are neither inherently dangerous, natural hazards, nor unforeseen.
 
 
 27
 Swimming, snorkeling, boating, fishing, and a host of other activities are permissible in an unzoned area. In my view, if the decision to zone is discretionary, the decision to allow mixed uses--that is, the decision not to zone--is similarly discretionary. In this case, one of the government's appropriate policy choices was to mix zoned and unzoned areas in this lake, thereby maximizing usage and safety for all those taking advantage of the recreational opportunities on the entire lake. Indeed, the applicable regulation requires that zoned areas be held to a minimum number and size in order to permit the greatest use of the lake by all interests. See majority opinion at n. 2. The discretionary policy choice itself included the choice not to warn, for the very decision to allow mixed uses implemented the policy choice. Congress cannot have intended to waive immunity for such a clear policy choice as the decision to allow mixed uses of government lands and lakes.
 
 
 28
 The fact that a particular group of swimmers--or snorkelers in this case--choose to pursue their interests in an area left unzoned and thus open to mixed uses, rather than in the safer zoned area, does not change the fact that the decision not to zone the area was discretionary and carried with it no duty to warn of authorized but mixed uses of the area. Any danger to which the plaintiff was subjected arose from the policy determination itself--the decision to permit mixed uses.
 
 
 29
 This case does not present the problem of a preexisting or natural hazard as was presented in Smith, 546 F.2d at 874. In Smith, "[t]he decision to develop only certain areas did not create the problem or the need to decide whether warning signs should be erected." Id. at 877. The danger in Smith came from thermal springs, and this court declared that the need to decide whether to warn of such a hazard "has existed ever since Yellowstone was opened to the public." Id. The danger here, unlike the danger in Smith, was the danger of the decision itself--that is, that the area was not to be restricted to just boating or just snorkeling, but rather kept open to all legitimate uses.
 
 
 30
 We are also not confronted here with a situation in which the government affirmatively undertook to provide a safety device and the device malfunctioned. See Indian Towing Co. v. United States, 350 U.S. 61, 62, 76 S.Ct. 122, 123, 100 L.Ed.48 (1955) (involving negligence in operation of lighthouse on island in Gulf of Mexico). The decision not to zone in this case is more nearly like the decision regarding where to locate the lighthouse in Indian Towing. I daresay no one would venture to require a warning sign saying "Warning, no lighthouse" on every dangerous promontory or sandbar in the Gulf of Mexico. I would hold that the discretionary function exception immunizes the government from liability in this case.
 
 
 
 [1]
 For purposes of reviewing a motion to dismiss, we accept plaintiff's allegations as true and indulge reasonable inferences in her favor. See, e.g., Weatherhead v. Globe Int'l, Inc., 832 F.2d 1226, 1228 (10th Cir.1987)
 
 
 [2]
 SDR 1130-2-7, which apparently was promulgated by the COE, provides as follows:
 "5-4. Zoning. Lakes will be zoned to protect the public and to promote safe water oriented sports and other activities. Zoned areas will be held to minimum number and size in order to permit the greatest use of the lake by all interests. Permanent zoning will be generally limited to swimming, boat launching, commercial dock areas, heavy use areas where congestion exists, and areas of danger. Zoning for aircraft will be in accordance with the applicable section of Title 36 CFR.
 5-5. Marking. Areas to be zoned will be clearly marked with buoys complying with the Uniform State Waterway Marking System. Buoys will contain the minimum information and be sufficiently legible for the using public to readily determine the zone restrictions. Channels will be marked with nun- and can-type buoys or midchannel marker buoys. Areas where boats are prohibited will be marked with appropriate buoys. When possible buoys should be connected by lines or cable to prevent boats from entering the area. For public safety all the uncleared areas of the reservoir will be clearly and permanently marked so that the public will be adequately advised that the areas are not cleared and that only low speed boating is permitted. Marking and warning devices which will be functional under fluctuating water surfaces, unmistakable as to intent, and economical to install and maintain will be designed. This design should not be limited to devices and methods previously used."
 
 
 [3]
 The dissent argues that if the decision to zone is discretionary so is the decision to allow mixed uses and not to zone. Dissenting Op. at 901. We agree and so stated, ante at 897-98. The dissent continues, however, to assert that because the decision not to zone the area was discretionary the COE had no duty to warn. Dissenting Op. at 901. The dissent in effect ignores the law in this circuit that the duty to warn must be considered separately from the initial zoning decision in determining the applicability of the discretionary function exception. Smith v. United States, 546 F.2d 872, 877 (10th Cir.1976); see also Ducey v. United States, 713 F.2d 504, 515 (9th Cir.1983). In addition, Berkovitz mandates that only decisions involving policy judgments are discretionary and immune from liability, 108 S.Ct. at 1959, and the dissent fails to point out what public policy considerations possibly could be involved in the COE's decision not to warn snorkelers or swimmers of known dangers in the Crappie Point area. Finally, we note that despite the dissent's intimations to the contrary, we are not holding that a decision not to zone carries with it a duty to warn. Whether that duty exists is a question of state negligence law. We hold only that the "alleged failure to warn swimmers of dangerous conditions in a popular swimming area does not implicate any social, economic, or political policy judgments with which the discretionary function exception properly is concerned." Ante at 897-98
 
 
 [4]
 The government argues that even if fees were charged to users of Tenkiller Lake, Boyd did not pay one and thus the subsection C exception is inapplicable to him. The statute, however, does not require, nor is any authority cited for the proposition, that a person must actually pay a charge before invoking subsection C. On the contrary, the plain language "any charge" compels the opposite conclusion
 
 
 [5]
 Boyd argues that this issue is not properly before us since it was not raised in the district court. Generally, we will not consider arguments raised for the first time on appeal. However, as James was decided after the district court's ruling, the question presented primarily is one of law, and both parties have briefed this issue, we elect to address it here. See, e.g., Romain v. Shear, 799 F.2d 1416, 1419 (9th Cir.1986), cert. denied, 481 U.S. 1050, 107 S.Ct. 2183, 95 L.Ed.2d 840 (1987)
 
 
 [6]
 The court also declined to distinguish between the active and passive operations of a flood control facility due to the difficulty of making such distinctions. McCarthy, 850 F.2d at 561. In our view, while such a distinction may be difficult in some cases, this does not justify a grant of blanket immunity for all cases and especially in the one sub judice where the distinction is clear