United States Court of Appeals,

Eleventh Circuit.

No. 94-5036

Non-Argument Calendar.

Beverly S. REESE, Personal Representative of the Estate of James C. Reese, on Behalf of the Estate of James C. Reese and on Behalf of Beverly S. Reese, Surviving Wife of James C. Reese, Jamie L. Reese, Surviving Minor Daughter of James C. Reese, Leandra J. Reese, Surviving Minor Daughter of James C. Reese, Plaintiff-Appellant,

Leandra J. Reese, Intervenor,

v.

SOUTH FLORIDA WATER MANAGEMENT DISTRICT, an Agency and/or Subdivision of the State of Florida, Defendant-Third-Party Plaintiff,

v.

UNITED STATES ARMY CORPS OF ENGINEERS, Terrence C. Salt, as District Engineer, U.S. Army Corps of Engineers, Jacksonville District, Thomas Taylor, Third-Party Defendants-Appellees.

July 27, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 94-8108-CIV-JLK), James Lawrence King, Judge.

Before ANDERSON, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

This is an appeal from the dismissal of appellant's complaint based on governmental immunity pursuant to the Flood Control Act, 33 U.S.C. § 702c. Appellants Beverly S. Reese and her two minor children ("Reese") filed a wrongful death action for the drowning of her husband and their father, James C. Reese ("James Reese"), against the South Florida Water Management District in the state court of Florida. The South Florida Water Management District filed a third party claim for contribution or indemnity against the

United States Army Corps of Engineers ("Corps") and Terrence Salt as District Engineer, and the United States removed the case to federal court. Reese subsequently filed another wrongful death action directly against the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, and the cases were consolidated. The United States moved to dismiss both cases based on governmental immunity pursuant to 33 U.S.C. § 702c and the district court granted the motion, remanding the state case back to state court.

The decedent drowned while fishing in Lake Okeechobee, which contains water and flood control structures supervised by the Corps. The drowning occurred after the Corps opened a water control device or lock which operated beneath the water's surface to allow waters to flow downstream from the higher level of the lake. James Reese was in a boat near the lock, engaged in recreational fishing, when the lock opening created a powerful current which forced him and his boat against a cable strung across the lock's entry. He was thrown overboard and his body was flushed down through the bottom of the lock and eventually downstream.

The Flood Control Act of 1928, 33 U.S.C. § 702c, states in pertinent part:

> No liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place.

Reese argues, nonetheless, that the United States is not entitled to immunity in this case pursuant to the Flood Control Act because the water which caused James Reese's drowning was released by the United States for irrigational, agricultural and environmental

purposes and not exclusively for purposes of flood control.

What happened to James Reese is unfortunate and tragic, and perhaps could have been avoided if warnings or a schedule of water releases had been posted. Nonetheless, the United States of America is immune from liability in this case. On the basis of *United States v. James,* 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986), we find that the applicability of § 702c immunity in multi-purpose projects such as the Central and South Florida Project does not depend upon the particular use of the project when the negligence occurred. In *James,* as in this case, recreational users of reservoirs were injured or drowned when the Corps opened retaining structures to control "flood stage" waters. In interpreting § 702c, the Court held that the word "damage" includes injury to both property and person, and the words "flood" and "flood waters" apply to "all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well as to waters that such projects cannot control." *Id.* at 605, 106 S.Ct. at 3121. Moreover, found the Court, the language "liability of *any* kind" for "*any* damage" requires broad construction. *Id.* (emphasis in original).

After tracing the legislative history of 33 U.S.C. § 702c, the *James* court concluded that sweeping language of § 702c " "safeguarded the United States against liability of any kind for damage from or by floods or flood waters in the broadest and most emphatic language.' " *Id.* at 608, 106 S.Ct. at 3122-23 (quoting *National Mfg. Co. v. United States,* 210 F.2d 263, 270 (8th Cir.1954), *cert. denied,* 347 U.S. 967, 74 S.Ct. 778, 98 L.Ed.2d

1108 (1954)). Finally, the Supreme Court also found that the purpose of the project, if authorized by Congress as a flood control project, was determinative of whether Congress intended immunity to apply. *Id.* at 610 n. 10, 106 S.Ct. at 3124 n. 10.

In the case at bar, the level of Lake Okeechobee was being controlled in order to direct water into a canal that was used for a variety of purposes, including irrigation, well recharging and deterring salt water intrusion. A lock was opened to allow floodwaters to flow downstream from the higher elevation of Lake Okeechobee. These facts are nearly identical to those in *James.* The only arguable distinction that appellants offer is that while the Supreme Court found in *James* that the water involved was discharged to control flooding, *id.* at 606 n. 7, 106 S.Ct. at 3121 n. 7, here the water was also used for irrigation and other purposes.

Even assuming the water was released "solely for" or "only for" irrigation and other purposes, it was water contained within a multi-purpose federal flood control project, and *James* clearly held that all water in a federal flood control project is considered "flood water" if it is part of the project. *Id.* at 605, 106 S.Ct. at 3121. The periodic release of water is fundamental to the operation of a flood control project.

Reese also argues that *James* is distinguishable in other ways and cites as support *Boyd v. United States,* 881 F.2d 895 (10th Cir.1989), *Henderson v. United States,* 965 F.2d 1488 (8th Cir.1992), and *Denham v. United States,* 646 F.Supp. 1021 (W.D.Tex.1986), *aff'd,* 834 F.2d 518 (5th Cir.1987). In *Boyd,* the

decedent was struck and killed by a boat while snorkeling in a reservoir under the control of the Corps.  The Tenth Circuit found that while the reservoir was operated by the Corps for flood control purposes, the United States was not entitled to immunity because the "requisite nexus" was not established between its operation of the reservoir as a recreational facility and its immunity from liability associated with flood control operations. *Boyd,* 881 F.2d at 900.  In the instant case, by contrast, we do find a sufficient nexus since, although decedent was engaged in recreational fishing, the Corp's opening of the lock which led to his death was a flood control operation.

In *Henderson,* decedent drowned while wade fishing near a dam operated by the Corps.  Water was released to generate hydroelectric power pursuant to an order by a local electric cooperative, and decedent, who was standing on a sand bar, was swept away to his death.  The Eighth Circuit found that it could not " "conclude that governmental control of flood waters was a substantial factor in causing [the decedent's] injuries.' " *Henderson,* 965 F.2d at 1492 (citation omitted).  But while the Eighth Circuit did not bar plaintiff's claim, it did distinguish *Henderson* from another Eighth Circuit case, *Dewitt Bank & Trust Co. v. United States,* 878 F.2d 246 (8th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 493 (1990).

In *Dewitt,* a recreational swimmer was denied a cause of action for injuring himself by diving into shallow water:

> [Plaintiff] ... was injured by diving into the shallow waters of a federal flood control project.  In operating the project for flood control and navigation, the Corps maintained the waters at this shallow level.  Thus, governmental control of

flood waters was a substantial factor in causing [plaintiff's] ... injuries.

*Dewitt,* 878 F.2d at 247. Here, the operation of the Lake Okeechobee lock, like the maintenance of the shallow water in *Dewitt,* and unlike the generation of hydroelectric power for the local cooperative in *Henderson,* or the snorkeling accident in *Boyd,* was clearly undertaken for government flood control purposes.

In *Denham,* a man swimming in a lake owned and operated by the Corps struck his head on an underwater obstruction—a buoy anchor abandoned by the Corps—and was rendered a quadriplegic. The District Court, affirmed by the Fifth Circuit, found that the injury arose out of the dam's use as a recreational facility and had no relationship to the control of floodwaters. In the instant case, again, the death of James Reese arose directly out of the Corps' floodwater control operations at Lake Okeechobee.

Thus, we do not find these cases applicable and are persuaded that *James* controls the outcome here. Accordingly, the district court's dismissal of appellants' complaint is AFFIRMED.