Gabriele **BIERER–CARTER**, Personal Representative of the Estate of James Carter, Jr., Deceased, Plaintiff,

v.

**UNITED STATES of America, Defendant.**

**Case No. 11–14102–CIV.**

United States District Court, S.D. Florida.

July 27, 2011.

termining the amount in controversy.

Warren A. Zimmerman, Associates and Bruce L. Scheiner, Fort Myers, FL, George E. Nader, Trenam Kemker, Tampa, FL, for Plaintiff.

Andrew Victor, U.S. Department of Justice, Washington, DC, for Defendant.

### *ORDER GRANTING DEFENDANT UNITED STATES' MOTION TO DISMISS*

MICHAEL K. MOORE, District Judge.

THIS CAUSE came before the Court upon the United States' Motion to Dismiss (ECF No. 10), Gabriele Bierer–Carter's Response to the United States' **Motion to Dismiss and** Memorandum of Law in Support, with Request for Oral Argument (ECF No. 15), and Reply Memorandum in Support of United States' Motion to Dismiss (ECF No. 16). This Motion is now ripe for review.

UPON CONSIDERATION of the Motion, the Response, the Reply, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

## I. BACKGROUND [1]

This incident arises from the United States' alleged negligence and failure to warn of the dangers caused by a water regulating structure that created unsafe currents in Lake Istokpoga and resulted in the death of a recreational boater.

In August 2008, the United States Army Corps of Engineers (the "Corps") and the South Florida Water Management District ("SFWMD") participated in a program to assist in restoring the Kissimmee River. As part of the redevelopment of the Kissimmee River, the Corps and SFWMD held responsibilities to maintain and pay the costs for real property located in the Kissimmee River area. To assist with these obligations, the Corps and SFWMD contracted duties to third parties to manage some of the real property.

The Corps contracted with Harry Pepper & Associates, Inc. ("Pepper") to regulate the flow of water from a gated spillway located on Canal 41A (the "Canal") at the outlet of Lake Istokpoga, in Highlands County, Florida known as Structure 68. Structure 68 released water from Lake Istokpoga into the Canal by using remote-controlled vertical gate lifts. When Structure 68's gate lifts were opened, water would discharge from Lake Istokpoga into the Canal. The rate of water flowing from Lake Istokpoga into the Canal would vary depending on the height of the vertical gate lifts and the water levels. When the vertical gate lifts opened, the water created currents, causing objects in the water to move towards Structure 68. To prevent

boats from being pulled into Structure 68, a boat barrier, made of a steel cable that spanned across the water with flotation devices, was located upstream of Structure 68,

On August 26, 2008 at approximately 9:30 AM, Pepper informed the Corps that the boat barrier upstream of Structure 68 was disconnected. The vertical gate lifts of Structure 68 were open and the flow of water was pouring out over 3,700 cubic feet per second. This rate of water flow caused a potentially unsafe current for boaters. At approximately 2:18 PM, an employee from Pepper contacted the Corps by email in an attempt to coordinate with the SFWMD to close Structure 68's gate lifts because the boat barrier was still disconnected. Only the SFWMD maintained the ability to close the spillway. At approximately 2:43 PM, a Corps employee forwarded the email to SFWMD, but no Corps employees took action to confirm that SFWMD would close the gates or secure the boat barrier.

On August 26, 2008 at approximately 8:30 PM, James Carter, Jr. ("Carter, Jr.") and two others began fishing from their boat on Lake Istokpoga. At that time, Structure 68's gate lifts remained open and neither the Corps nor SFWMD had reconnected the boat barrier. The waters released from Structure 68 were causing strong currents on Lake Istokpoga. As a result, Carter, Jr.'s boat drifted towards Structure 68, the boat capsized, and the water violently swept him through Structure 68. Carter, Jr.'s corpse was eventually found several miles downstream on August 28, 2008.

The personal representative for Carter, Jr.'s estate, Gabriele Bierer–Carter ("Carter"), brings this lawsuit against the Un-

---

1. The facts herein are taken from the Complaint. *See* Compl. (ECF No. 1). The facts are viewed in a light most favorable to the Plaintiff.

tied States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA") for numerous theories of negligence based. upon the actions and the omission to act on the part of the Corps. The United States has filed this Motion to Dismiss claiming that this Court lacks subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. STANDARD OF REVIEW

*Rule 12(b)(1)*

"Federal Courts are courts of limited jurisdiction." *Ishler v. Internal Revenue,* 237 Fed.Appx. 394, 395 (11th Cir.2007) (citation omitted). When a court determines that it lacks subject matter jurisdiction, it must dismiss the action. *See* Fed.R.Civ.P. 12(h)(3). The plaintiff bears the burden of demonstrating that a court has subject matter jurisdiction. *Sweet Pea Marine, Ltd. v. APJ Marine Inc.,* 411 F.3d 1242, 1248 (11th Cir.2005).

"[W]hen a defendant properly challenges subject matter jurisdiction under Rule 12(b)(1) the district court is free to independently weigh facts, and 'may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56.'" *Morrison v. Amway Corp.,* 323 F.3d 920, 925 (11th Cir.2003) (quoting *Lawrence v. Dunbar,* 919 F.2d 1525, 1529 (11th Cir.1990)). A defendant may attack subject matter jurisdiction under Rule 12(b)(1) by making "facial attacks" or "factual attacks." *U.S. v. Spitzer,* 245 Fed.Appx. 908, 910 (11th Cir. 2007). When there is a "facial attack" on the complaint, courts "look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Lawrence,* 919 F.2d at 1529. "Factual Attacks," on the other hand, challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* (internal quotations and citation omitted).

As stated by the Eleventh Circuit in *Lawrence:*

> Because at issue in . a factual 12(b)(1) motion is the trial court's jurisdiction— its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence,* 919 F.2d at 1529 (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549. F.2d 884, 891 (3d Cir.1977)). Courts may not weigh the evidence when the factual attack "also implicates an element of the cause of action." *Id.* Where the factual attack is intertwined with the merits of the cause of action, "the proper course of action for the district court ... is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case." *Id.* (quoting *Williamson v. Tucker,* 645 F.2d 404, 415–16 (5th Cir.1981)).

## III. ANALYSIS

### A. *Whether the Factual Attack Implicates an Element of the Cause of Action*

■ The United States claims that it is entitled to immunity under the Mississippi Flood Control Act of 1928 ("Flood Control Act"). 33 U.S.C. § 702c. In making its argument, the United States has submitted materials for this Court to review that are outside of the complaint. Carter contends that the United States' attack is intertwined with the merits of her cause of

action, and therefore, this Court should not weigh the evidence provided by the United States.

■ This Court must determine whether the United States' 12(b)(1) motion is a facial or factual attack. A factual attack challenges the "existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Lawrence*, 919 F.2d at 1529 (citation omitted). The United States asserts that it should receive immunity based on the character and purpose of the water that was released from Structure 68. Such argument is irrespective of the pleadings and is supported by a declaration and exhibits submitted by the United States. *See* Decl. of Sean L. Smith (ECF No. 10–1). As such, the United States' argument that immunity attaches is a factual attack.

Since the United States is asserting a factual attack, this Court must heed the Eleventh Circuit's warnings and analyze whether the factual attack is intertwined with the merits of Carter's cause of action. *See Lawrence*, 919 F.2d at 1529. Carter asserts numerous claims of negligence under the FTCA against the United States for the unreasonably dangerous waters caused by Structure 68, the unsecured boat barrier, and improper warning signs. As explained below, the Flood Control Act affords the United States immunity if the character and purpose of the waters that caused Carter, Jr.'s death were due to flood waters.

This Court's factual determinations as to why Structure 68 released the water and the analysis of the character of the water are issues distinct from whether Carter can prove her claim under the FTCA, Indeed, the character and purpose of the water—whether the release was to regulate flood waters or to serve any other function—has no bearing on whether the

United States acted negligently. *See Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir.1995) (stating that the "resolution of the jurisdictional issue-i.e., whether the government is immune from suit under § 702c of the Act—does not depend on the FTCA which provides the substantive claims in the case"); *see also Pringle v. United States*, 208 F.3d 1220, 1223, n. 2 (10th Cir.2000) (noting that "[c]ertainly, in cases where the jurisdictional issue depends on a statute wholly separate from the statute **that provides the substantive claim, it is easy to see that the merits are not** intertwined with the jurisdictional issue. In *Holt*, for example, the jurisdictional issue depended on the Flood Control Act of 1928, 33 U.S.C. § 702c, while the underlying claim arose under the FTCA."). Such findings of the character and purpose of the released waters will merely guide this Court in concluding whether it has subject matter jurisdiction and does not affect the merits of the cause of action.

This Court finds that the United States has made a factual attack under Rule 12(b)(1) that is not intertwined with the merits of Carter's cause of action. Consequently, this Court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Lawrence*, 919 F.2d at 1529. This Court must next determine whether it has subject matter jurisdiction.

### B. Subject Matter Jurisdiction

■ The United States argues that this Court lacks subject matter jurisdiction. Specifically, the Flood Control Act grants immunity and bars recovery from the federal government where it would otherwise be liable pursuant to the FTCA. The immunity provision of the Flood Control Act states in pertinent part that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by

floods or flood waters at any place." 33 U.S.C. § 702c.

The United States Supreme Court analyzed the scope of immunity granted to the United States under the Flood Control Act in *United States v. James*, 478 U.S. 597, 106 S.Ct. 3116, 92 L.Ed.2d 483. In *James*, the Court analyzed two separate incidents where the Corps released waters from a retaining structure in order to control flooding resulting in the death of recreational users of reservoirs. *Id.* In assessing whether the United States should receive immunity, the Court determined that the statute should be applied using the plain language of 33 U.S.C. § 702c. *Id.* at 612, 106 S.Ct. 3116. The Court held that the Flood Control Act gave the United States immunity from "damages" when injury occurred to either a person or property. *Id.* The Court, in dicta, found that the Flood Control Act pertains to "flood control projects designed to carry flood waters" and "the terms 'flood' and 'flood waters' apply to all waters contained in or carried through a federal flood control project for purposes of or related to flood control, as well to waters that such projects cannot control." *Id.* at 605, 106 S.Ct. 3116. After reviewing the legislative history of 33 U.S.C. § 702 and interpreting the language of the statute, the Court concluded that the United States should receive immunity under such circumstances. *Id.* at 612, 106 S.Ct. 3116.

The Eleventh Circuit has also addressed 33 U.S.C, § 702 in *Reese v. South Florida Water Management District*, 59 F.3d 1128 (11th Cir.1995). The facts of *Reese* are strikingly similar to this case. *Id.* at 1129. In Reese, the plaintiff was fishing on a boat in Lake Okeechobee. *Id.* During the plaintiff's fishing trip, the Corps opened an underwater locking device that caused water to flow from higher water levels downstream to Lake Okeechobee. *Id.* This cre-

ated a very strong current, dragging the fisherman and his boat downstream. *Id.* The fisherman's boat was "forced against a cable strung across the lock's entry." *Id.* As a result, the fisherman fell out of his boat and into the water. *Id.* The fisherman was dragged through the lock and he eventually died from the incident. *Id.*

In *Reese*, the plaintiff argued that immunity did not apply to the United States because the lock was released for "agricultural and environmental purposes and not exclusively for purposes of flood control." *Id.* The Court did not find that argument persuasive and explained that:

> [e]ven assuming the water was released "solely for" or "only for" irrigation and other purposes, it was water contained within a multi-purpose federal flood control project, and *James* clearly held that all water in a federal flood control project is considered "flood water" if it is part of the project. The periodic release of water is fundamental to the operation of a flood control project.

*Id.* at 1130 (citing *James*, 478 U.S. at 605, 106 S.Ct. 3116) (internal citation omitted). The Eleventh Circuit found "a sufficient nexus since, although decedent was engaged in recreational fishing, the Corp's opening of the lock which led to his death was a flood control operation." *Id.* As a result, the United States received immunity. *Id.* at 1131.

After *Reese*, the Supreme Court in *Central Green Co. v. United States* clarified what it meant by "related to flood control." 531 U.S. 425, 430, 121 S.Ct. 1005, 148 L.Ed.2d 919 (2001). The *Central Green* Court opined that "[i]n *James*, we held that the phrase 'floods or flood waters' is not narrowly confined to those waters that a federal project is unable to control, and that it encompasses waters that are released for flood control purposes when reservoir waters are at flood stage." *Id.* at

431, 121 S.Ct. 1005. The Court developed its analysis and explained that "in determining whether § 702c immunity attaches, courts should consider the character of the waters that cause the relevant damage rather than the relation between that damage and a flood control project." *Id.* at 438, 121 S.Ct. 1005. The Court then held that 33 U.S.C. § 702c "directs us to determine the scope of immunity conferred, not by the character of the federal project or the purposes it serves, but by the character of the waters that cause the relevant damage and the purposes behind their release." *Id.* at 434, 121 S.Ct. 1005.

Carter argues that immunity does not apply because the damages occurred because of the Corps' failure to provide warning signs near Structure 68 and to ensure that the boat barrier was properly secured. In other words, the death of Carter, Jr. was not only caused by flood waters but also by a failure to warn of the dangers. This argument is unavailing. Both the alleged improper warning signs and the failure to attach the boat barrier directly relate to the dangers of water currents when Structure 68's gates are lifted open. Carter cannot circumvent the Flood Control Act's provision of immunity by aiming this lawsuit at the inadequate measures taken by the United States to make Structure 68 reasonably safe. Under Carter's theory that immunity does not apply because of the Corps' failure to warn or other negligent actions, the United States should not have received immunity in *Reese* or *James* where the courts discussed the failure of the defendants to adequately warn recreational users of the dangers of the waters. *Reese,* 59 F.3d at 1129; *James,* 478 U.S. at 600, 106 S.Ct. 3116.

For instance, the Eleventh Circuit rejected this exact argument in *Reese* when it stated that "[w]hat happened ... is un-fortunate and tragic, and perhaps could have been avoided if warnings or a schedule of water releases had been posted. Nonetheless, the United States of America is immune from liability in this case." *Reese,* 59 F.3d at 1129. Moreover, the Supreme Court in James granted the United States immunity where there were not adequate signs warning of the dangerous waters and currents. *See James,* 478 U.S. at 600, 106 S.Ct. 3116 (granting immunity to the United States despite the Court's analysis in one of the incidents that there were "[o]nly two faded signs at the entrance of the drainage structure [that] warned of the dangerous current. The boaters could not see the signs until they already had been swept past them.").

Carter makes a more relevant and persuasive argument that it is unclear whether the release of the waters from Structure 68 were related to flood control. Carter contends, therefore, that the character and purpose of the released waters were not for flooding and immunity does not attach. The Supreme Court in *Central Green* set forth the scope of immunity under 33 U.S.C. § 702c, and consequently, this Court must analyze the "character of the waters" and "the purpose behind their release" to determine whether flood waters killed Carter, Jr. *Central Green,* 531 U.S. at 434, 121 S.Ct. 1005.

There is no dispute that one purpose of Structure 68 was to regulate the flow of water for flood control. *See* Pl.'s Resp. to Mot. to Dismiss at p. 2 (stating that "[o]n August 26, 2008, the decedent was fishing ... on Lake Istokpoga, upstream of Structure 68, a gated spillway constructed ... for the purposes of navigation, irrigation, and flood control, among others."). In addition, Structure 68 served other roles, such as to assist with irrigation. Given the multipurpose use of Structure 68, it is necessary to determine why the gates

were opened on August 26, 2008. The United States submitted the Declaration of Sean L. Smith (ECF No. 10–1) (the "Declaration") to explain its reasons for lifting the gates on August 26, 2008.[2]

In the United States' Declaration, Sean L. Smith, an employee of the Corps who oversees the water management operations of the Central and Southern Florida Flood Control Project, stated in pertinent part that:

> [t]he primary purpose of Structure 68 is for flood control, as it flows for flood waters in Lake Istokpoga to drain into Canal 41A, but Structure 68 can make other releases, such as for irrigation supply. Structure 68's flood control releases depend on Lake Istokpoga's seasonal elevation, as prescribed by Water Control Plan. When water levels reach flood stage flood control operations commence.
>
> In August 2008, Tropical Storm Fay inundated central Florida with widespread rainfall. Lake Istokpoga's water level rose above 38.25 feet on August 15, 2008. The water level continued to rise and by August 18, it had exceeded 38.5 feet and remained above 38.5 [feet] until September 1. Under the seasonal criteria set forth in the Water Control Manual, Lake Istokpoga was at flood stage between August 15, 2008 and September 1, 2008.
>
> In accordance with the regulation schedule contained in the Water Control Plan, Structure 68 began making flood control releases on August 18, 2008, and continued to make flood control releases until the gates of Structure 68 were closed on August 26, 2008, after the plaintiff's decedent was swept through the structure.

*Id.* ¶¶ 6–8

Carter argues that the Declaration does not adequately show that the opening of Structure 68's gate lifts on August 26, 2008 were for flood control purposes. Carter contends that Structure 68 is operated automatically and that the opening of the gates, which could be for various reasons, does not equate to releasing flood waters or that the waters were at flood stage. Despite making these arguments, Carter fails to provide any other explanation as to why the gate lifts were opened and does not specifically contest the statements in the United States' Declaration. Instead, Carter speculates on how the Government could have provided more persuasive evidence and avers that the United States has not sufficiently demonstrated that the lifting of the gates, resulting in Carter, Jr.'s death, were flood waters. Carter's criticism is unhelpful to this Court in developing an ulterior character and purpose for the released waters.

Rather, the United States has shown that the water should be characterized as flood water and that the purpose of releasing the water was due to flooding. As explained in the Declaration, "Lake Istokpoga was at flood stage between August 15, 2008 and September 1, 2008." *See* Decl. of Sean L. Smith at ¶ 7. Structure 68 "continued to make flood control releases until the gates of Structure 68 were closed . . . after the plaintiff's decedent was swept through the structure." *Id.* at ¶ 8. In addition, Structure 68 had three automatic gate lifts that opened when "the headwater elevation reaches 0.2 ft above the variable water control elevation . . . ." *Id.* at ¶ 5. On August 26, 2008, the headwater was 0.2 feet above the variable water control elevation due to "widespread rain-

---

**2.** As explained *supra,* this Court may weigh the evidence outside of the Complaint because the United States is making a factual attack on subject matter jurisdiction, and such findings by this Court are not intertwined with the merits of Carter's cause of action.

fall," which resulted in Lake Istokpoga being at a "flood stage." *Id.* at ¶ 7. Due to the levels of water, Structure 68 automatically opened its gates and released water—flood waters—into the Canal on August 26, 2008.

Consequently, the character of the water that was released from Structure 68 constitutes flood water. This flood water was discharged into the Canal for the purpose of regulating Lake Istokpoga's water levels at flood stage. The released flood waters created strong currents while Carter, Jr. was fishing on his boat, causing his boat to capsize. As admitted in the United States' Declaration, Carter, Jr. was then pulled underwater through Structure 68, which led to his death. Given the purpose and character of the waters released from Structure 68 and the manner in which Carter, Jr. died, the United States is entitled to immunity under the Flood Control Act. Accordingly, this Court lacks subject matter jurisdiction over this action.

## IV. CONCLUSION

In light of the foregoing, it is

ORDERED AND ADJUDGED that the United States' Motion to Dismiss (ECF No. 10) is GRANTED. This case is DISMISSED. The Clerk of the Court is instructed to CLOSE this case. All pending motions are DENIED AS MOOT.